AMERICAN INTERNATIONAL DRIVEAWAY, a California Corporation, Plaintiff,

v.

Shirley ALEXANDER, an Individual, and A&P Shipping Corporation, a Hawaii corporation, Defendants.

Civ. No. 79–0434.

United States District Court, D. Hawaii.

April 22, 1980.

Peter Kent, Scott R. Nakagawa, Honolulu, Hawaii, for plaintiff.

W. K. Watkins, Jr., Honolulu, Hawaii, for defendants.

## DECISION ON MOTION TO DISMISS AND ORDER

SAMUEL P. KING, Chief Judge.

### STATEMENT OF THE CASE

On October 5, 1979, Plaintiff American International Driveaway brought this action, Civil No. 79–0434, against Defendants Shirley Alexander and A&P Shipping Corporation complaining of certain pickup and delivery activities of defendants and asking for injunctive relief and damages. Plaintiff moved for a temporary restraining order (which was not granted) and for a preliminary injunction. Defendants moved to dismiss. The motion for preliminary injunction and the motion to dismiss came on for hearing together on January 10, 1980.

### RELATIONSHIP BETWEEN CIVIL NO. 76–0060 AND CIVIL NO. 79–0434

The motion to dismiss quite properly calls the court's attention to another pending action, Civil No. 76–0060.[1]

Plaintiff explains the two separate actions as aimed at two different operations.

1. On February 17, 1976, in Civil No. 76-0060, this same Plaintiff brought an action against these same Defendants (plus another defendant, Auto Driveaway Company), seeking to enjoin certain activities of Defendants. The matter came before Judge Dick Yin Wong on a motion for preliminary injunction. On May 12, 1976, Judge Wong issued a preliminary injunction enjoining Auto Driveaway Company from "transporting motor vehicles in interstate commerce from points in the State of Hawaii to points in the other states of the United States, and from points in other states to points in the State of Hawaii." Defendants Shirley Alexander (President of A&P Shipping Corporation) and A&P Shipping Corporation were also enjoined from doing the same things "while in active concert or participation with Defendant Auto Driveaway Company".

On December 21, 1976, Defendants Shirley Alexander and A&P Shipping Corporation were found by Judge Wong to be in contempt of the preliminary injunction in Civil No. 76–0060 by attempting to continue to engage in the prohibited activities through a sham agency relationship with Inter-Intra Forwarding, Inc.

On January 3, 1977, Defendants in Civil No. 76–0060 moved to lift the preliminary injunction issued therein on the grounds that on July 21, 1976, the Public Utilities Commission of the State of Hawaii had issued its Decision and Order No. 4325 granting A&P Shipping Corporation temporary authority to "drive automobiles between points on the Island of Oahu", that an application was pending to make this operating authority permanent, that American International Driveaway had been allowed to intervene in that proceeding, and that on November 4, 1976, the Interstate Commerce Commission had issued freight forwarder Permit No. FF–483 authorizing A&P Shipping Corporation to operate as "a freight forwarder transporting used automobiles and trucks, between points in the United States (including Alaska but excluding Hawaii) on the one hand, and, on the other, points in Hawaii."

On June 21, 1977, Judge Wong entered an order denying the motion to lift temporary injunction and a concurrent motion to reconsider contempt order. The preliminary injunction was modified to include Inter-Intra Forwarding, Inc., as a corporation with whom Defendants here could not be "in active concert or participation". Then on August 22, 1977, Judge Wong entered an order (signed July 22, 1977) granting the motion of Defendants Shirley Alexander and A&P Shipping Corporation to lift preliminary injunction, insofar as it related to "transporting or holding out to transport motor vehicles on Oahu, or from transporting, or holding out to arrange, provide or furnish transportation of, motor vehicles as a freight forwarder in interstate commerce for compensation from points in the State of Hawaii to points in other states of the United States, and from points in other states to points in the State of Hawaii", effective as of June 10, 1977.

Nothing happened thereafter in Civil No. 76–0060 until this court's Order to Show Cause issued on July 11, 1979, why this matter should not be dismissed on August 10, 1979. Plaintiff responded with a statement of readiness for trial. The order to show cause was continued to February 22, 1980, but prior thereto and on February 20, 1980, a pretrial conference was held before the U. S. Magistrate. Among other things, non-jury trial was set for July 29, 1980, beginning at 10:00 a. m., and further pretrial prior thereto on July 21, 1980, at 11:00 a. m. There has been some intervening discovery activity, but there the matter rests with respect to Civil No. 76–0060.

"In the present case [Civil No. 79–0434], Plaintiff does not challenge the freight forwarder operations of Defendants. In this case, the common carrier operations of Defendants are challenged", Supp. Memo of Plaintiff p. 2, and again at p. 3:

> The prior civil action between the parties herein, Civil No. 76–0060, involved the carrier services of Defendants prior to February 17, 1976 [the date of filing]. In that case, the Defendants' general lack of authority from the ICC was at issue.

> In the present case, Plaintiff challenges the motor carrier service of Defendant conducted since 1976. In this case, a very specific aspect of Defendants' operations is being challenged, i. e., the transportation of motor vehicles from homes and points on Oahu to the Matson and Hawaii Marine Line terminals at Honolulu.

> Moreover, since the prior action was decided [sic], new regulations were promulgated by the ICC. 49 C.F.R. § 1062.3. This new regulation makes it crystal clear that the motor common carrier service of Defendants is illegal.

Whether there is anything left to litigate in Civil No. 76–0060 is not now before the court. That question will be faced in due course. There is enough difference between the two actions to make it inappropriate to grant Defendants' Motion to Dismiss at this time.

## STATEMENT OF THE ISSUES

Civil No. 79–0434 sets out three counts.

Count I alleges that Defendants are operating as a motor common carrier without proper authority from the Interstate Commerce Commission, in violation of 49 U.S.C. § 10921 and 49 C.F.R. § 1062.3.

Count II alleges that Defendants willfully did not file and publish rates or tariffs as required by 49 U.S.C. Chapter 107 or willfully did not observe those tariffs until changed by law, in violation of 49 U.S.C. §§ 11903(b), 10761, and 10762(a)(1) and 49 U.S.C. Chapter 107.

Count III alleges that Defendants in operating as a freight forwarder controlled their own motor carrier service, in violation of 49 U.S.C. § 11323(a) and (b).

Defendant A&P Shipping Corporation holds ICC Permit No. FF–483 dated November 8, 1976, granted under part IV of the Interstate Commerce Act, authorizing service:

> As a freight forwarder transporting used automobiles and trucks between points in the United States (including Alaska but excluding Hawaii) on the one hand, and, on the other, points in Hawaii.

Defendant A&P Shipping Corporation also holds, by virtue of Decision and Order No. 5096 of the Hawaii Public Utilities Commission, dated April 28, 1978, and effective upon service,

> . . . a permanent certificate of public convenience and necessity to operate as a common carrier for the transportation of used automobiles and pickup trucks to ¾ tons by means of a driveaway service and the movement of household pets, including horses, over irregular routes on the Island of Oahu.

Plaintiff argues that Defendant A&P Shipping Corporation (Defendant Shirley Alexander is only named because she is "a principal managing official, director, officer, shareholder, and an active participant in A&P Shipping Corporation") must hold a permit from the Interstate Commerce Commission authorizing service as a "motor carrier" in order legally to continue that part of its business which involves the transportation of used automobiles and trucks from terminals at Honolulu Harbor to homes on Oahu or from homes on Oahu to terminals at Honolulu Harbor. Plaintiff contends that this service is not excluded or exempt from the jurisdiction of the Interstate Commerce Commission and that the certificate of public convenience and necessity from the Hawaii Public Utilities Commission, while necessary for controlled service not

subject to ICC jurisdiction, is ineffective to legalize service that is subject to ICC jurisdiction.

Defendants argue that the activities complained of are authorized by ICC Permit No. FF–483 and Hawaii Public Utilities Commission Decision and Order No. 5096 and applicable federal statutes and regulations, that this court lacks jurisdiction because Plaintiff failed to comply with the provisions of the Urgent Deficiencies Act, and that the Plaintiff lacks standing to bring this action because it is not affected by Defendants' operations.

### STANDING

■ Plaintiff has standing to bring this action. Plaintiff alleges and makes a prima facie showing that Defendants are competing with Plaintiff to Plaintiff's injury in violation of 49 U.S.C. Chapter 109, Subchapter II. Suit is therefore specifically authorized under 49 U.S.C. § 11708(a). Whether it later develops that there is no such competition or injury is immaterial.

### URGENT DEFICIENCIES ACT

■ Defendants' argument that this court lacks jurisdiction because Plaintiff failed to comply with the provisions of 28 U.S.C. §§ 2321–2325, 2342, "et al." is without merit. This is not an action "to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission" or "to enforce, in whole or in part, any order of the Interstate Commerce Commission other than for payment of money or the collection of fines, penalties, and forfeitures".

### SCOPE OF ICC PERMIT NO. FF–483

In *Motor Carrier Operation in the State of Hawaii*, Ex Parte No. MC–59, 84 M.C.C. 5 (1960), decided December 5, 1960, the Interstate Commerce Commission granted a general certificate of exemption with respect to certain transportation by motor carriers in interstate or foreign commerce solely within the State of Hawaii. A proper understanding of that exemption requires that portions of the Commission's report, discussion and conclusions be quoted, as follows:

Upon the admission of Hawaii into the Union as a State on August 21, 1959, the Interstate Commerce Act became applicable to transportation by motor vehicle within that State to the extent that such transportation is in interstate and foreign commerce as defined in section 203(a)(10) and (11) of the act. . . . by order dated February 26, 1960, we instituted the instant proceeding in order to develop an adequate record to determine (1) whether the transportation in interstate and foreign commerce performed by motor carrier lawfully engaged in operation solely within the State of Hawaii is in fact of such nature, character, or quantity as not substantially to affect or impair uniform regulation by this Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy declared in the act, and whether a certificate of exemption should be issued under section 204(a)(4a), with respect to such transportation, and (2) whether the removal of the partial exemption in section 203(b)(8) of the act with respect to motor-vehicle transportation in interstate and foreign commerce within the commercial zones of cities and towns in the State of Hawaii and the subjection of such transportation to all requirements of the act are necessary in order to carry out the national transportation policy declared therein. . . .

Considering all factors, we are persuaded that the exercise of our jurisdiction in the regulation of Hawaiian motor carriers, whose operations in large part might well be characterized as in the nature of a pickup and delivery (particularly as to inbound traffic, a large portion of which comes to rest at the ports), would amount to unwarranted Federal regulation of a stub ended, essentially local, operation for no useful purpose.

. . .

. . . the act provides for the issuance of an exemption certificate to a

qualified motor carrier or "class of motor carriers." We deem it unnecessary and impracticable to issue individual certificates to the qualified carriers. Accordingly, the original of a certificate exempting all qualified motor carriers in Hawaii as a class will be filed with the official record herein and copies thereof will be furnished upon request therefor. A motor carrier will be deemed qualified, as that term is used herein, if it is lawfully engaged in operations solely within the State of Hawaii (which, in accord with precedent, does not include a carrier affiliated with one operating outside Hawaii). It necessarily follows that those motor carriers operating in Hawaii in interstate or foreign commerce which are not qualified will have to obtain authority from this Commission in order to continue lawfully such operations.

The second phase of this investigation namely, the question of whether to remove the partial exemption provided in section 203(b)(8) of the act, becomes moot in view of our conclusions herein.

We find that the transportation in interstate or foreign commerce performed by all qualified motor carriers lawfully engaged in operation solely within the State of Hawaii is in fact of such nature, character, or quantity not substantially to affect or impair uniform regulation by this Commission of transportation by motor carriers engaged in interstate or foreign commerce in effectuating the national transportation policy; provided, however, that if the State of Hawaii makes a determination of the respective intrastate operating rights of such carriers, the exemption herein granted shall not be construed as exempting operations in interstate or foreign commerce any more extensive than those corresponding to the intrastate authorities granted by the State; and that a certificate exempting such operations should be issued, to remain in effect until further order of this Commission.

We further find that in view of the above finding the question of removal of the partial exemption of section 203(b)(8) of the act is moot.

The foregoing order in Ex Parte No. MC–59 is still in effect. It appears in the Code of Federal Regulations at 49 C.F.R. §§ 1050.1 and 1050.5. Thus Defendant A&P Shipping Corporation need not obtain a permit as a motor carrier from the Interstate Commerce Commission for its solely intrastate pickup and delivery of "used automobiles and pickup trucks to ¾ tons" unless the fact that the same corporation operates outside Hawaii as a freight forwarder deprives it of the class exemption of the order in Ex Parte No. MC–59.

49 U.S.C. § 10923(b)(3) provides:

(3) The Commission may not deny any part of an application for a freight forwarder permit filed by a corporation controlled by, or under common control with—

(A) a common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I [Rail, Rail-Water, Express, and Pipeline Carrier Transportation], II [Motor Carrier Transportation], or III [Water Carrier Transportation] of chapter 105 of this title, because of the relationship between the corporation and that carrier; and

(B) a common carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 only because the service to be provided by the corporation will compete with service provided by another freight forwarder subject to subchapter IV [Freight Forwarder Service] of that chapter.

Defendants argue also that Section 410(h) of the Interstate Commerce Act provides that freight forwarders are authorized to perform their own motor vehicle operations within their "terminal areas" in the performance of transfer, collection and delivery services.

49 U.S.C. § 10523(b) provides in part:

(b)(1) Except to the extent provided in paragraph (2) of this subsection, the Commission does not have jurisdiction under this subchapter [Subchapter II, Motor

Carrier Transportation] over transportation by motor vehicle provided in a terminal area when the transportation—

(A) is a transfer, collection, or delivery; and

(B) is provided by a person as an agent or under other arrangement for—

.    .    .    .    .

(iv) a freight forwarder subject to the jurisdiction of the Commission under subchapter IV [Freight Forwarder Service] of this chapter [Chapter 105].

(2) Transportation exempt from the jurisdiction of the Commission under paragraph (1) of this subsection is considered transportation provided by the carrier or service provided by the freight forwarder for whom the transportation was provided and is subject to the jurisdiction of the Commission . . . under subchapter IV [Freight Forwarder Service] of this chapter [Chapter 105] when provided for such a freight forwarder.

2. These sections read as follows:
§ 1049.1 Terminal areas of motor carriers and freight forwarders at municipalities served.

The terminal area within the meaning of section 202(c) of the Interstate Commerce Act (49 U.S.C. 302(c)) of any motor carrier of property subject to Part II or of any freight forwarder subject to Part IV thereof, at any municipality authorized to be served by such motor carrier of property or motor carrier of passengers in the transportation of express or freight forwarder, within which transportation by motor vehicle in the performance of transfer, collection, or delivery services may be performed by, or for, such motor carrier of property or freight forwarder without compliance with the provisions, other than those in section 204 (49 U.S.C. 304) relative to qualifications and maximum hours of service of employees and safety of operation and equipment, of Part II of the act consists of and includes all points or places which are (a) within the commercial zone, as defined by this Commission, of that municipality, and (b) not beyond the limits of the operating authority of such motor carrier of property or freight forwarder.
§ 1049.2 Terminal areas of motor carriers and freight forwarders at unincorporated communities served.

The terminal area within the meaning of section 202(c) of the Interstate Commerce Act (49 U.S.C. 302(c)) of any motor carrier of property

"Terminal area" is a term of art which differs from place to place. The term is defined in 49 C.F.R. §§ 1049.1 and 1049.2.[2] On Oahu, it could be interpreted to include the entire island.

These statutes, regulations, orders, and authorizations appear to support Defendants' position that Defendants' operations comply with all applicable federal requirements. Plaintiff cites new rules appearing at 49 C.F.R. § 1062.3 as leading to a contrary result.

The public notice by the Interstate Commerce Commission states at 44 Fed.Reg. 7,965 (1979) in explanation of the new rules:

SUPPLEMENTARY INFORMATION

The purpose of the regulations adopted in this case is to provide a simplified certification process for motor common carriers seeking authority to transport shipments of property within the commercial zone of port cities where the shipments have a prior or subsequent movement by maritime carrier.

subject to Part II (49 U.S.C. 301 et seq.) or any freight forwarder subject to Part IV thereof (49 U.S.C. 1001 et seq.), at any unincorporated community having a post office of the same name which is authorized to be served by such motor carrier of property or motor carrier of passengers in the transportation of express or freight forwarder, within which transportation by motor vehicle in the performance of transfer, collection, or delivery services may be performed by, or for, such motor carrier of property or freight forwarder without compliance with the provisions, other than those in section 204 (49 U.S.C. 304) relating to qualifications and maximum hours of service of employees and safety of operations and equipment, of Part II of the act, consists of (a) all points in the United States which are located within the limits of the operating authority of the motor carrier of property or freight forwarder involved, and within 3 miles of the post office at such authorized unincorporated point if it has a population less than 2,500, within 4 miles if it has a population of 2,500 but less than 25,000, or within 6 miles if it has a population of 25,000 or more; (b) all of any municipality any part of which is included under (a) of this section; and (c) any municipality wholly surrounded by any municipality included under paragraph (b) of this section, or so wholly surrounded except for a water boundary.

## THE STATUTORY SITUATION

Commission regulations and our general statutory framework demonstrate the relative unimportance of regulating incidental or short haul transportation of property. Section 10526(b)(1) (formerly section 203(b)(8)) exempts the transportation of property wholly within a municipality, between contiguous municipalities, or within a zone (the "commercial zone") adjacent to and commercially part of these municipalities, except when the transportation is under common control, management, or arrangement for continuous carriage to outside points. Section 10523 (formerly section 202(c)) exempts the transportation of freight in the performance of transfer, collection, and delivery services within the defined terminal areas of railroads and express companies, motor carriers, inland water carriers, and freight forwarders subject to our jurisdiction. Furthermore, section 10526(a)(8) (formerly section 203(b)(7a)) provides an exemption for the transportation of persons or property when incidental to transportation by aircraft.

However, no regulatory exemption is provided for local pickup and delivery services performed entirely within a commercial zone of a port city where the local service is provided as part of a through movement with a maritime carrier not subject to the Interstate Commerce Act. *See Consolidated Freightways, Inc. Ext. —Seattle, Wash.*, 74 M.C.C. 593 (1958). Thus, water carriers subject to the jurisdiction of the Federal Maritime Commission are not accorded the benefit of a statutorily created exempt terminal area in which motor carriers may conduct local collection and delivery services without regulatory restraints.

In *Consolidated Freightways, supra* at 597, the Commission noted that Congress probably intended to exempt from economic regulation all purely local operations in enacting the terminal area and commercial zone exemptions in the Act. 49 U.S.C. 10523 and 49 U.S.C. 10526(b)(1). But the common arrangement between maritime carriers and local motor carriers for continuous carriage renders the commercial zone exemption of the Act unavailable. A regulated motor carrier may perform some local service under current rules under the commercial zone exemption. Where the shipper or receiver, or a private ocean carrier makes arrangements with the local motor carrier, no authority from this Commission is necessary for the intraport movement. *See Service Transp. Co. Contracts and Agreements*, 44 M.C.C. 419 (1945). However, the practical problem is that often local transportation is arranged by the FMC regulated ocean carrier.

No economic justification has been advanced for this anomalous situation and it appears that the lack of an exemption for this type of intraport movement is the result of oversight. The adopted regulations would rectify the current situation where an FMC authorized carrier is obligated to employ the service of motor carriers having specific authority to serve points within the commercial zone of a port city, but where Commission regulated and private water carriers are not.

While there is no specific exemption for this type of traffic, the general provisions of the Act makes it clear that we have the power and the duty to correct this competitively discriminatory situation. The transportation policy of the Commission, 49 U.S.C. 10101, is to ensure coordinated transportation and provide for the impartial regulation of the modes of transportation, preserving the inherent advantage of each mode. The continued regulation of this intraport, ex-water traffic runs counter to this transportation policy, and to the entire exempt versus non-exempt economic regulatory structure of the Act.

The court fails to see how the new rules at 49 C.F.R. § 1062 help Plaintiff.

Plaintiff cites *Burnham Van Service, Inc., Extension-Hawaii*, No. MC–682 (Sub. No. 8), 103 M.C.C. 372 (1966), as authority for some limitation of the class exemption under Ex Parte No. MC–59. That case in-

volved household goods carriers "whose operations either directly or as a result of affiliation with other carriers are not confined to Hawaii". The class exemption order of Ex Parte No. MC–59 was not meant to, and does not, extend to such carriers. The cited case has no application to this case.

## PRIMARY JURISDICTION IN ICC

A point not raised or argued by either party is that this court should stay all proceedings herein and refer this matter to the Interstate Commerce Commission for its determination of the meaning, scope, and application of ICC Permit No. FF–483, the class exemption granted under Ex Parte No. MC–59, and the applicable statutory provisions.

49 U.S.C. § 11708(b) [3] specifically requires that a complaint in a civil action under 49 U.S.C. § 11708(a) "shall be served on the Interstate Commerce Commission and a certificate of service must appear in the complaint filed with the court." The record herein does not contain a certificate of service either in or aside from the complaint, although 49 U.S.C. § 11708(a) is cited as a basis for jurisdiction over this action. It is clear from the remainder of 49 U.S.C. § 11708(b) that a district court should not proceed too far into the details and merits of an action under 49 U.S.C. § 11708(a) until the Interstate Commerce Commission has been served and given a reasonable opportunity to intervene or to notify the court that the Commission intends to consider in a proceeding before the Commission the matter that is the subject of this complaint.

■ A technical application of the statute might call for a dismissal of the complaint for failure to have a certificate of service on the Interstate Commerce Commission "appear in the complaint filed with the court." However, the court interprets this requirement as one that may be met by subsequent action and pleading similar to an amendment to the complaint. If no certificate of service is filed, that portion of the complaint that depends upon 49 U.S.C. § 11708(a) for the jurisdiction of this court may be dismissed.

## CONCLUSION AND ORDER

Accordingly, it is ORDERED that all proceedings herein are stayed for not more than 30 days from the date of this order pending service by the Plaintiff of the complaint herein upon the Interstate Commerce Commission and the filing of a certificate of such service, and further stayed thereafter pending a response from the Interstate Commerce Commission as to its intentions with respect to the matter that is the subject of the complaint.

If service and the filing of a certificate of service as ordered are not completed within 30 days from the date of this order, the court will entertain a motion to dismiss so much of the complaint as depends upon 49 U.S.C. § 11708(a) as a basis for the jurisdiction of this court over this action. The court does not express an opinion at this time that continued failure to comply with the service requirements of 49 U.S.C.

---

**3.** § 11708. Private enforcement: motor carrier and freight forwarder licensing

(a) If a person provides transportation by motor vehicle or service of a freight forwarder in clear violation of section 10921- 10924, 10927, 10930–10932, or 11323 of this title, a person injured by the transportation or service may bring a civil action to enforce any such section. In a civil action under this subsection, trial is in the judicial district in which the person who violated that section operates.

(b) A copy of the complaint in a civil action under subsection (a) of this section shall be served on the Interstate Commerce Commission and a certificate of service must appear in the complaint filed with the court. The Com-

mission may intervene in a civil action under subsection (a) of this section. The Commission may notify the district court in which the action is pending that it intends to consider the matter that is the subject of the complaint in a proceeding before the Commission. When that notice is filed, the court shall stay further action pending disposition of the proceeding before the Commission.

(c) In a civil action under subsection (a) of this section, the court may determine the amount of and award a reasonable attorney's fee to the prevailing party. That fee is in addition to costs allowable under the Federal Rules of Civil Procedure.

§ 11708(a) necessarily results in dismissal of all or any part of Plaintiff's causes of action. If the Interstate Commerce Commission does not choose to proceed in this matter, either party may move for a lifting of this stay so that further proceedings herein may go forward.