PHOENIX ASSURANCE COMPANY,
Plaintiff,

v.

K–MART CORP., et al., Defendants.

Civil Action No. 95–1081.

United States District Court,
D. New Jersey.

Sept. 5, 1997.

Gerard F. Smith, Denville, NJ, for Plaintiff.

Patrick J. McAuley, Connell, Foley & Geiser, Roseland, NJ, for Defendant K–Mart Corporation.

Frank P. Arleo, Arseneault & Krovatin, Chatham, NJ, for Defendant AFC Express.

## OPINION

WOLIN, District Judge.

This case is before the Court on the motions of two defendants. Defendant AFC Express, Inc. ("AFC Express" or "AFC") moves for summary judgment on the ground that this Court lacks subject matter jurisdiction over the claims of Phoenix Assurance Company of New York ("Phoenix") against AFC Express. In the alternative, AFC Express seeks to have this Court limit AFC Express's liability to $50.00, the amount stated as maximum liability in a document entitled "Conditions of Contract." Defendant Mo–Ark Truck Services, Inc. ("Mo–Ark") seeks summary judgment on the ground that this Court has no subject matter jurisdiction over Phoenix's claims against Mo–Ark. In the alternative, Mo–Ark moves for summary judgment on the ground that it was not negligent in arranging to transport the watches, now missing, of The Gerson Company ("Gerson"). For the reasons stated herein, the defendants' motions will be denied and this case will be stayed pending a referral of various matters to the Secretary of Transportation.

## BACKGROUND

Phoenix, an insurance company, paid Gerson, Phoenix's insured, for a lost shipment of wrist watches. This case concerns Phoenix's endeavor to recover from the parties responsible for transporting the watches on their intended journey.

On October 27, 1993, Gerson agreed with AFC Express that AFC Express would arrange to transport a shipment of watches from Shawnee Mission, Kansas to K–Mart in North Bergen, New Jersey, for delivery on November 3, 1993.[1]

---

1. Prior to this occasion, AFC Express had procured transportation for Gerson with regard to over 80 other shipments. According to AFC Express, Gerson always agreed to the terms and conditions contained in the AFC Express documents.

Also, according to AFC Express, Gerson was aware that AFC express was "an air freight for-

AFC issued its "Shipper's Receipt" number 43087, acknowledging receipt of the shipment at issue. The receipt that the shipment consisted of 43 skids, containing 2819 pieces. Each "piece" was a carton, containing an average of twenty-five watches, for a total of approximately 70,000 watches.

Additionally, AFC provided Gerson with a document entitled "The Gerson Company: TUESDAY SHIPPING SCHEDULE."[2] (Henderson Certif. Ex. 3.) The document, which indicates that it was prepared on April 8, 1993, provides that AFC Express, "utilizing Red Arrow Corporation truck" would pick up the goods on Tuesday afternoon at 3:00 p.m. (*Id.*) The schedule provides further that "[t]he shipment will be immediately taken to Kansas City Int'l Airport." (*Id.*) According to the schedule, the freight would be received by the airline by 6:00, the flight would depart MCI at 10:30 p.m. Tuesday night, and the flight would arrive at EWR, Newark, N.J. at 6:30 A.M. Wednesday morning. (*Id.*) According to the schedule, AFC Express would recover the shipment from the airline at 11:00 a.m., and take the shipment from the airport to North Bergen for the scheduled delivery to the K–Mart Distribution Center. (*Id.*) The schedule provides also that if no value was declared, any claim would be compensated at 50 cents per pound: "It is understood that when a value is not declared, any claim compensated, will be at the rate of .50 cents per pound." (*Id.*)

A document entitled "Conditions of Contract," entered into by Gerson and AFC Express, provides that AFC Express reserves the right to transport the shipment by surface when air transport is not feasible:

5. *No carrier providing transportation services with respect to the shipment, including AFC Express is bound to pickup, transport or deliver the shipment by any*

particular schedule, vehicle, vessel or aircraft, or in time for any particular market or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward the shipment by any carrier or route between the point of shipment and the point of destination. AFC Express's liability, if any, for delay in the pickup, transportation or delivery of any shipment shall be limited to the value of the transportation charges for such shipment.

(Henderson Certif. Ex. 1.)

The Conditions of Contract indicates also that the shipment was to be transported without any "declared value." (*Id.*) Paragraph 7 of the Conditions of Contract expressly states that "[u]nless a higher value is declared in writing on the Bill of Lading, each shipment will be deemed to have a maximum declared value of $50.00." (*Id.*) No value was declared on the Air Way Bill. (*Id.* Ex. 2.)

AFC Express subcontracted with Red Arrow Air Cargo Express ("Red Arrow") and instructed that company to pick up the shipment at Gerson's place of business in Shawnee Mission, Kansas. The goods would thereafter travel entirely by ground transportation on their journey across country.[3]

Red Arrow separated the goods into two shipments. It placed 26 skids into the care of J.S. Trucking and 17 skids into the care of Mo–Ark.[4] The goods entrusted to J.S. Trucking arrived at K–Mart without incident. Mo–Ark arranged with U.S. Fast Track, Inc., a "motor carrier," to transport the other 17 skids to K–Mart. Fast Track then engaged the services of James Sherling, from whose care the 17 skids of watches never surfaced. The current whereabouts of Sherling are not known.

---

warder that did not personally transport the goods." [AFC Express Br. in Support of S.J. at 3.) According to Phoenix, AFC Express is a "motor carrier." (Phoenix Br. in Opp. to S.J. at 9.)

**2.** It appears that the Tuesday Shipping Schedule represented a long term relationship between Gerson and AFC Express and that the parties relied on the document for more than one transaction.

**3.** Phoenix observes that on October 22, 1993, AFC Express received from Gerson a similar shipment of watches, consisting of 1796 pieces on 29 skids and weighing 15,712 pounds. According to Phoenix, this shipment also traveled entirely by ground transportation, and not by air.

**4.** Mo–Ark claims to be a "broker." Phoenix argues that Mo–Ark is a "motor carrier."

After the loss, Glenn Henderson, President of AFC Express, spoke with Steve Rock, Gerson's Plant Manger. (Henderson Certif. ¶ 10.) Rock allegedly questioned the $50.00 liability limit in the Conditions of Contract and stated that he believed that the true limit should be $0.50/lb., the amount noted in the Tuesday Shipping schedule. (*Id.*) According to Glenn Henderson, in response Henderson agreed to pay the $0.50/lb. rate. (*Id.*) According to Henderson, he agreed to send a check of $5,000 if Rock would send evidence that the lost shipment weighed 10,000 lbs. (*Id.*) Rock never sent any evidence and Henderson never sent the check. (*Id.*)

Phoenix, which had insured the shipment at issue, paid Gerson for its losses and brought this subrogation action. Phoenix alleges in its first count that the defendants breached their contracts of bailment, freight forwarding, and carriage, damaging Gerson. In its second count, Phoenix alleges conversion of the watches. Phoenix alleges that the defendants are jointly and severally liable for the value of the watches.

■ Here, AFC Express moves for summary judgment. According to AFC Express, this Court has no subject matter jurisdiction over Phoenix's claims against AFC Express because Phoenix premises jurisdiction under the Interstate Commerce Act ("ICA") and AFC is an "air freight forwarder" not within the jurisdiction of the Interstate Commerce Commission ("ICC"), or now the Department of Transportation ("DOT").[5] Additionally, AFC Express argues that any claim that Phoenix has against AFC Express is limited to $50.00, the amount stated as maximum liability in the Conditions of Contract.

Phoenix argues in response to AFC Express's motion for summary judgment that this Court has jurisdiction because AFC Express acted as a "motor carrier" with regard to the shipment at issue and that AFC Express, therefore, is subject to ICA jurisdiction. Alternatively Phoenix argues that this Court has supplemental jurisdiction over Phoenix's claims against AFC Express. With regard to the limitation of liability contained in the Conditions of Contract, Phoenix argues that the limitation of liability is not enforceable because it is not registered with the Secretary of Transportation as required by statute.

Mo-Ark moves for summary judgment on the ground that this Court has no subject matter jurisdiction over Phoenix's claims against it because Mo-Ark is a "broker" not subject to Carmack Amendment liability. Alternatively, Mo-Ark argues that it is not liable to Phoenix, because Mo-Ark is a "broker" not subject to Carmack Amendment liability and because it was not negligent in its relationship to Gerson.

In response, Phoenix argues that this Court has subject matter jurisdiction over its claims against Mo-Ark because the Court has jurisdiction over the claims against Mo-Ark, even if Mo-Ark is a "broker," and because, in the alternative, this Court has supplemental jurisdiction over the claims. Phoenix argues that there are disputed issues of material fact regarding whether Mo-Ark is a "motor carrier" under the relevant ICA provisions.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

---

5. Phoenix filed this action on March 2, 1995, claiming a right to recovery under the ICA. On January 1, 1996, however, the ICC Termination Act of 1995 (the "ICCTA"), Pub.L. No,. 104–88, 109 Stat. 803, became effective. The ICCTA abolished the ICC and transferred the remaining functions of the ICC to the DOT and the Surface Transportation Board ("STB"). The ICCTA also recodified the ICA and renumbered many ICA sections.

Although technically, the ICA would apply as codified before the effectiveness of the ICCTA, the Court applies the new codification of the ICA for two reasons. First, the recodification of the ICA is not substantively different from the former codification. Second, because the Court finds that matters must be referred to the federal agency currently responsible for enforcing the ICA, and because the ICC has been eliminated, the Court must address itself to the agency currently responsible for resolving the matters at issue. *See, e.g.,* 49 U.S.C. § 13902 (addressing registration of motor carriers); 49 U.S.C. § 13903 (addressing registration of freight forwarders); and 49 U.S.C. § 13904 (addressing registration of brokers).

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where a summary judgment motion is properly made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). An issue of material fact is genuine if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Olson v. General Elec. Astrospace,* 101 F.3d 947, 951 (3d Cir.1996); *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993).

## I. This Court Has Supplemental Subject Matter Jurisdiction Over Phoenix's Claims Against AFC Express and Mo–Ark

█ The Court finds that it has supplemental jurisdiction over Phoenix's claims against both AFC Express and Mo–Ark. Consequently, the Court need not address whether it would have independent subject matter jurisdiction over the claims.

A district court has original jurisdiction over any civil action arising under any Act of Congress regulating commerce:

The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, However,* That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt of bill of lad-

ing exceeds $10,000, exclusive of interest and costs.

28 U.S.C. § 1337(a).[6] Consequently, a district court has jurisdiction over claims that fall under the Carmack Amendment, currently at 49 U.S.C. § 14706, which provides that motor carriers are liable for the loss or injury to goods in interstate transport:

A carrier providing transportation or service subject to jurisdiction under subchapter I or III or chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III or chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the recovering carrier, (B) the delivering carrier, (C) another carrier over whose line or route the property is transported. . . .

49 U.S.C. § 14706.[7]

Section 1367 of title 28 provides that a district court has supplemental jurisdiction over all claims in an action over which the court has original jurisdiction that are so related to the claims in the action within the court's original jurisdiction that they form part of the same case or controversy:

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Importantly, this supplemental jurisdiction extends to claims that

---

**6.** The Court need not address the amount in controversy requirement other than to say that Phoenix alleges at least $437,755.65 in damages, clearly satisfying the amount in controversy requirement.

**7.** This statute is the current codification of the Carmack Amendment to the Interstate Commerce Act. The Carmack Amendment was previously codified at 49 U.S.C. § 11707 and 49 U.S.C. § 20(11). The statutory provision remains basically the same under its current codification.

involve the joinder or intervention of additional parties. *See id.*

■ A district court may decline to exercise supplemental jurisdiction over a claim, however, if (1) the supplemental claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See id.*

In this case the Court undisputedly has jurisdiction under the Carmack Amendment over Phoenix's claims against Red Arrow and Fast Track, which are motor carriers registered with the ICC. Red Arrow is a motor carrier holding both common and contract carrier authority issued by the ICC under docket number MC–150001. (Bange Aff. Ex. B.) Fast Track also holds both common and contract carrier authority, issued by the ICC under docket number MC–181922. (Bange Aff. Ex. C.)

Accordingly, the Court has supplemental jurisdiction over Phoenix's claims against AFC Express and Mo–Ark, regardless of the status of these entities under the relevant statutes and regulations. Phoenix's claims against AFC and Mo–Ark are part of the same "case or controversy" as Phoenix's claims against Red Arrow and Fast Track— all of Phoenix's claims concern a single shipment of lost watches. And none of the considerations which might persuade the Court to decline to exercise jurisdiction are present here. The Court will, therefore, exercise supplemental jurisdiction over Phoenix's claims against AFC Express and Mo–Ark and the Court need not address whether subject matter jurisdiction would exist independently over the claims against these defendants.

## II. AFC Express Has Not Established Entitlement to Summary Judgment On the Issue Whether AFC Is an Air Freight Forwarder

■ AFC Express argues that it is not liable under the Carmack Amendment for the loss of the watches at issue because AFC is an "air freight forwarder" and not liable as would be a "carrier" or "freight forwarder" for the loss of goods in interstate transportation. The Court finds that AFC Express is not entitled to summary judgment on this issue and will refer the determination of what role AFC Express played in the underlying events to the Secretary of Transportation.

The Carmack Amendment to the ICA provides an exclusive remedy for the loss of goods transported in interstate commerce by motor carriers and freight forwarders. *See, e.g., Harrah v. Minnesota Mining & Mfg. Co.,* 809 F.Supp. 313, 317 (D.N.J.1992); *Dress Barn, Inc. v. LTA Group, Inc.,* 822 F.Supp. 88, 89 (D.Conn.1993) (gathering authority).

Under the Carmack Amendment, an initial common carrier is liable to the shipper for the value of goods lost in interstate commerce, without regard to the initial carrier's negligence. See 49 U.S.C. § 14706(a)(1); *Conair Corp. v. Old Dominion Freight Line, Inc.,* 22 F.3d 529, 531 (3d Cir.1994). A "carrier" includes a motor carrier, a water carrier, or a freight forwarder. 49 U.S.C. § 13102(3). A "motor carrier" is a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102(12).

■ A "freight forwarder" is also liable under the Carmack Amendment, because a freight forwarder is considered to be both the receiving and the delivering carrier under the statute. *See* 49 U.S.C. § 14706(a)(2). A "freight forwarder" is:

[A] person holding itself out to the general public ... to provide transportation of property for compensation and in the ordinary course of its business—

(A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;

(B) assumes responsibility for the transportation from the place of receipt to the place of destination; and

(C) uses for any part of the transportation a carrier subject to the jurisdiction under this subtitle.

The term does not include a person using transportation of an air carrier subject to part A of subtitle VII.

49 U.S.C. § 13102(8). To qualify as a "freight forwarder" one need not perform all of the functions authorized under the statute, as long as the party "proffers all of the services." *See, e.g., Metropolitan Shipping Agents of Ill., Inc. v. United States,* 342 F.Supp. 1266, 1269 (D.N.J.1972).

■ Air freight forwarders, however, are exempt from ICC jurisdiction where the air freight forwarder's use of motor transportation is necessitated by circumstances, such as weather or mechanical failure, beyond the control of the air freight forwarder:

> In general—Neither the Secretary nor the Board has jurisdiction under this part over—... transportation of property by motor vehicle in lieu of transportation by air craft because of adverse weather conditions or mechanical failure of the aircraft or other causes due to circumstances beyond the control of the carrier or shipper....

49 U.S.C. § 13506(a)(8)(C). Overbooking or oversolicitation of airspace does not create the type of emergency situation contemplated by this provision. *See Quality Exch., Inc. v. Universal Air Freight, Inc.,* 574 F.Supp. 622, 625 (W.D.N.C.1983) (gathering authority).

The Court finds that AFC Express may be a "freight forwarder." First, it is possible that in the course of AFC's business it "provides for assembling and consolidating" of shipments, even though it appears that AFC did not provide such services in this case; indeed, on the "Tuesday Shipping Schedule" a notation was made not to disturb any pallets, which may imply that pallets are sometimes divided. (Henderson Certif. Ex. 3.)

Second, it appears that AFC Express assumed responsibility for the transportation of the goods from the place of receipt to the place of destination. And, third, AFC used for a part of the transportation of the watches at issue several carriers subject to the jurisdiction of the Secretary of Transportation.

Additionally, AFC Express has not demonstrated that it undisputedly is an "air freight forwarder" and thereby exempt from Carmack Amendment liability. AFC Express has not established that its use of vehicle in lieu of transportation by air craft was due to adverse weather, mechanical failure, or some other cause beyond AFC's control. Rather AFC Express argues that by contract it had discretion to ship the watches by any means it chose.[8]

Because the Court finds that there are disputed facts as to whether AFC is a "freight forwarder," which is subject to ICA liability or whether AFC is an "air freight forwarder," which is exempt from that liability, the Court will deny summary judgment on the liability issue. As discussed below, however, the Court will allow the Secretary of Transportation an opportunity to determine whether the air freight forwarder exception indeed applies.

### III. Mo-Ark Has Not Established Entitlement to Summary Judgment On the Issue Whether Mo–Ark Is a Broker

■ In contrast to a "carrier" or "freight forwarder," a "broker," if not negligent, is generally not liable for the value of goods lost in interstate commerce. *See, e.g., Travelers Indemnity Co. v. Alliance Shippers, Inc.,* 654 F.Supp. 840, 842 (N.D.Cal.1986). As discussed above, a "carrier" is a person providing motor vehicle transportation for compensation. 49 U.S.C. § 13102(12). A "broker," however, is a person

---

**8.** The provision in the Conditions of Contract provides:

> No carrier providing transportation services with respect to the shipment, including AFC Express is bound to pickup, transport or deliver the shipment by any particular schedule, vehicle, vessel or aircraft, or in time for any particular market or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward the shipment by any carrier or route between the point of shipment and the point of destination.

other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation. 49 U.S.C. § 13102(2).

■ The parties here dispute whether Mo–Ark is a "broker" or a "carrier." Mo–Ark is licensed by the ICC as a property broker under docket number MC–163692. (Bange Aff. Ex. D.) Mo–Ark relies on this licensing in alleging that it is a broker under the statute. But, in his affidavit on behalf of Phoenix, Michael Bange argues that the relationship between Mo–Ark and Fast Track and the relationship between Mo–Ark and Red Arrow are unclear.

■ Indeed, Mo–Ark's registration as a broker and Mo–Ark's failure to register as a "carrier" are not dispositive of Mo–Ark's true identity. Rather, the gravamen of the issue is Mo–Ark's relationships to Fast Track and Red Arrow. And, because the Court finds that there are disputed issues of material fact regarding Mo–Ark's status, the Court will deny the motion for summary judgment. But, as discussed below, the Court will also refer the issue to the Secretary of Transportation for a ruling.

**IV. Phoenix Must Serve the Secretary of Transportation with a Copy of the Complaint, Pleadings, and Briefs Filed in this Action To Allow the Secretary To Determine the Status of AFC Express and Mo–Ark In this Case**

■ The Court must refer to the Secretary of Transportation the determination of the status of AFC Express and Mo–Ark under title 49. Phoenix has alleged that AFC Express acted as a "carrier" or "freight forwarder" without being registered with the Secretary of Transportation, in violation of various statutory provisions. And Phoenix has alleged that Mo–Ark acted as a "carrier" without being registered with the Secretary of Transportation, in violation of various statutory provisions. Because the statutory scheme of Title 49 requires a plaintiff with

Phoenix's allegations to serve the Secretary of Transportation with the Complaint to allow the Secretary to act as may be appropriate, the Court must stay this case pending notification of the Secretary and an appropriate response.

■ Certain procedural prerequisites must precede a civil action by a person injured by "transportation by motor vehicle or service" where the motor vehicle or service has failed to comply with statutory registration requirements. 49 U.S.C. § 14707. First, a copy of the complaint in the civil action must be served on the Secretary of Transportation and a certificate of service must appear in the complaint filed with the court. 49 U.S.C. § 14707(b). The failure to serve the Secretary of Transportation as an initial matter is not jurisdictional. *See. e.g., American International Driveaway v. Alexander,* 488 F.Supp. 808, 815 (D.Haw.1980). Rather, when the court determines that the Secretary of Transportation should have been notified, the court may stay the case pending service to the Secretary of Transportation. *See id.*

After receiving notice, the Secretary of Transportation then has the option to intervene. 49 U.S.C. § 14707(b). If the Secretary of Transportation files a notice with the district court in which the action is pending that the Secretary of Transportation intends to consider the matter that is the subject of the complaint, then the district court must stay further action pending disposition of the proceeding before the Secretary of Transportation. *Id.*

This action must be stayed until Phoenix files a proof of service of the Secretary of Transportation. As discussed above, the Court has found that AFC Express may not be entitled to avail itself of the "air freight forwarder" exception to the pertinent registration requirements and that AFC, therefore, may have operated without proper registration as a "motor carrier" or "freight forwarder." And the Court has found that Mo–Ark may not have merely acted as a "broker" under the relevant statutory provisions, but may have acted as a "carrier." Thus, it appears that both AFC Express and

Mo–Ark may be operating without proper registration, and that Phoenix's claims against them concern 49 U.S.C. § 14707 in addition to 49 U.S.C. § 14706. Consequently, the Court will refer the determination of the roles that AFC Express and Mo–Ark fulfilled to the Secretary of Transportation.

## V. The Court Will Defer the Determination of Whether the Limitation on Liability Contained in Either the Conditions of Contract or the Tuesday Shipping Schedule Effectively Limits AFC's Liability

AFC Express argues that its liability is limited to a maximum of $50.00, by virtue of a limit of liability provision contained in the Conditions of Contract. According to Phoenix, because AFC Express ignored the regulations and failed to file tariffs with the ICC, AFC's alleged limitation of liability is unenforceable. The Court will reserve decision on this issue until the AFC's status is determined.

■ If AFC Express is determined to be a freight forwarder, its Conditions of Contract may not suffice to limit its liability. The ICA provides that limitations of liability on the part of a freight forwarder are not valid unless filed with the Commission:

> A common carrier and freight forwarder may not limit or be exempt from liability imposed under subsection (a) of this section except as provided in this subsection. A limitation of liability or of the amount of recovery or representation or agreement in a receipt, bill of lading, contract, rule, or tariff filed with the Commission in violation of this section is void.

49 U.S.C. § 11707(c)(1). For a carrier or freight forwarder to limit is liability it must: (1) maintain a tariff within ICC guidelines, (2) obtain the shipper's agreement as to the liability, (3) give the shipper a reasonable opportunity to choose between two or more levels of liability, and (4) issue a receipt or bill of lading before moving the shipment. *See, e.g., Carmana Designs Ltd. v. North American Van Lines, Inc.*, 943 F.2d 316 (3d Cir.1991).

Because AFC's status under the ICA is unclear, the Court cannot determine whether the limitation on liability contained in the Conditions of Contract is enforceable. Therefore, the Court will defer that determination until the Secretary of Transportation acts or until the Secretary refuses to act and the Court determines AFC's status. If the Secretary of Transportation chooses to express an opinion on the issue, however, the Court would take that determination into consideration.

## CONCLUSION

For the above stated reasons, the motions of defendants AFC Express and Mo–Ark for summary judgment will be denied and all proceedings herein will be stayed for not more than thirty (30) days from the date of the attached Order pending service by the Phoenix of the Complaint herein upon the Secretary of Transportation and the filing of a certificate of such service, and further stayed thereafter pending a response from the Secretary of Transportation as to its intentions with respect to the relevant matters in the complaint.