744 A.2d 204 (2000)
Thomas GRIFFIN and his wife, Toni Griffin, Plaintiffs,
v.
PUBLIC SERVICE MUTUAL INSURANCE COMPANY, A corporation doing business in the State of New Jersey, Defendant-Appellant,
v.
Reliance National Insurance Company, A corporation doing business in the State of New Jersey, Defendant-Respondent, and Hebei Textile I/E Corporation, A foreign corporation doing business in the State of New Jersey, Tianjin Tianhai International Shipping Company Agency, A foreign corporation, Tianjin Tientsin Marine Shipping Company, A foreign Corporation, and Sea-Land Service, Inc., A corporation doing business in the State of New Jersey, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued November 30, 1999.
Decided January 25, 2000.
*205 David Lustbader, Livingston, for defendant-appellant (Philip M. Lustbader and David Lustbader, attorneys; David Lustbader, on the brief).
Cataldo F. Fazio, Paramus, for defendant-respondent.
Before Judges PRESSLER, LANDAU, and CIANCIA.
The opinion of the Court was delivered by LANDAU, J.A.D.
This appeal arises from the Law Division's grant of summary judgment to defendant Reliance National Insurance Company (Reliance) in a dispute over insurance coverage between insurance carriers arising out of an accident that occurred on April 30, 1992, while a tractor-trailer was being unloaded. The plaintiffs, Thomas and Toni Griffin, instituted a declaratory judgment action against both defendant-appellant Public Service Mutual (PSM), and defendant-respondent Reliance as insurers of the tractor-trailer that was involved in Thomas Griffin's accident. Public Service Mutual insured PJT Transportation, the company that owned the tractor portion of the tractor-trailer. Reliance insured Sea-Land Service, the company that owned the trailer portion, consisting of a container mounted on a chassis.
Plaintiffs had alleged in the personal injury action that the injuries suffered by Thomas Griffin when he opened the doors of the trailer to begin unloading were the result of negligent packing and loading of the container by either Hebei Textiles, Tianjian Tientsin Marine Shipping Company, Tianjin Tianhai International Shipping Company Agency, and/or Sea-Land Service. First consolidated with the declaratory judgment action, the negligence suit was later severed and then settled.[1]
Plaintiffs instituted the declaratory judgment action seeking to have the Law Division declare that one or both of the insurance companies that provided coverage for the companies that owned the tractor portion of the tractor-trailer and the trailer portion also provided coverage for the entities allegedly involved in the loading of the container. Reliance filed an answer and a cross-claim against PSM, asserting that PSM was the primary insurance carrier for the tractor-trailer. Before PSM could file an answer, plaintiffs and Reliance filed motions for summary judgment on the issue of whether the loading and unloading doctrine applied to the negligently loaded container, triggering insurance coverage by the insurance policies issued for the tractor and the trailer.
*206 The Law Division initially granted plaintiffs' cross-motion for summary judgment against Reliance. The judge held that even though the container was loaded in China, it was an "integral part of the vehicle at the time the accident occurred" and "[c]overage attached to the container in this case once it became attached to the chassis. It was in effect when the accident happened." Killeen Trucking, Inc. v. Great Am. Surplus Lines Ins. Co., 211 N.J.Super. 712, 716-17, 512 A.2d 590 (App. Div.1986) (holding that when a container is coupled to a chassis it constitutes a trailer for motor vehicle insurance purposes and will be covered by motor vehicle insurance). The judge found that Reliance, as the insurer of the container and chassis, was to defend and provide insurance coverage for the foreign companies, Tianjian Tientsin Marine Shipping Company (TMSC) and/or Tianjin Tianhai International Shipping Company Agency, who were involved in the allegedly negligent loading of the container.
The court determined that those foreign companies, while not named in the insurance policies, were users of the motor vehicle and entitled to coverage under the motor vehicle liability policies issued by the insurance companies as court-ordered additional insureds. N.J.S.A. 39:6A-3, N.J.S.A. 39:6B-1; Kennedy v. Jefferson Smurfit Co., 147 N.J. 394, 403, 688 A.2d 89 (1997) (concluding that statutorily mandated automobile insurance coverage is to be construed broadly and applies to containers loaded negligently and later attached to a tractor); See also Atlantic Mut. Ins. Co. v. Richards, 100 N.J.Super. 180, 185, 241 A.2d 468, (Ch.Div.1968), aff'd, 105 N.J.Super. 48, 251 A.2d 134 (App.Div.1969)(finding that automobile liability coverage extends to negligence in loading or unloading the automotive vehicle). Specifically, these foreign companies were declared court-ordered additional insureds under Reliance's insurance policy.
PSM, however, had not yet entered an appearance in the declaratory judgment action. In consequence, the ruling was limited to Reliance. After receiving the PSM policy issued to PJT Transportation, owner of the tractor, and after PSM filed an answer in the declaratory judgment proceeding, Reliance moved for summary judgment against PSM. Reliance asserted that to the extent it was to provide insurance for the foreign loading entities, that insurance was excess coverage only, and that under the terms of its own policy, PSM afforded primary insurance coverage for those entities. PSM argued below and reasserts on appeal, that summary judgment could not be granted because Reliance never properly established whether or not it had an insurance certification issued by the Interstate Commerce Commission (I.C.C.)[2] attached to the policy Reliance provided for Sea-Land.
The trial court granted summary judgment in favor of Reliance, finding that the language of the insurance policies clearly established that PSM provided primary insurance coverage for users of the tractor-trailer and that the Reliance policy provided only excess coverage. We affirm.
The purpose of the I.C.C. regulations in this regard was to ensure that a financially responsible party would be available to compensate a third party injured in a collision with an I.C.C. carrier. American Trucking Assoc. v. United States, 344 U.S. 298, 304-05, 73 S.Ct. 307, 311-12, 97 L.Ed. *207 337, 352-54 (1953). The I.C.C. required motor carriers to obtain minimum levels of financial responsibility and to file a certificate of insurance with the I.C.C. 49 C.F.R. §§ 387.7, 387.301.
The I.C.C. Certification form provides two boxes for the insurance carrier to check off whether the insurance coverage the company is providing for a particular insured is primary or excess. PSM contends that federal law required that Reliance have an I.C.C. certification attached to the insurance policy issued to Sea-Land and that because Reliance never submitted an I.C.C. certification, summary dismissal was premature. PSM argues that summary judgment should not have been granted because, had Reliance issued an I.C.C. certification with its policy to Sea-Land, the policy could have established that Reliance provided co-primary insurance coverage with PSM. PSM infers that the regulatory concerns underlying the I.C.C. regulations somehow mandate that Reliance provide co-primary coverage regardless of the terms of the respective policies.
An I.C.C. motor carrier endorsement provides that policy limitations or even violations of an insurance agreement by the insured will not relieve the insurance company of liability for a judgment against the motor carrier. The I.C.C. regulations were "adopted to combat abuses associated with the hiring of tractor owners who failed to meet certain levels of financial responsibility that precluded those injured in accidents with the tractor-trailer from obtaining recovery." Moore v. Nayer, 321 N.J.Super. 419, 431, 729 A.2d 449 (App.Div.1999), certif. granted, 162 N.J. 132, 741 A.2d 99 (1999).
Reliance maintains that I.C.C. regulations are not controlling in this situation and, that, even if it were required by law to have an I.C.C. certification, the certification would not change the insurance coverage allocation as between PSM and Reliance.
PSM relies on this Court's decision in Casey v. Selected Risks Ins. Co., 176 N.J.Super. 22, 422 A.2d 83 (App.Div.1980), in support of its argument that the regulatory policies of the I.C.C. alter the coverage allocation between the insurance companies when there is an injured party. However, Casey is distinguishable from the situation at hand. There, an insurance company refused to pay when a third party was injured by a tractor-trailer because the insured company did not comply with certain notice requirements in the policy. Casey, supra, 176 N.J.Super. at 27, 422 A.2d 83. We held that the injured plaintiff was entitled to recover for his injuries because such coverage furthered the I.C.C. law and regulations protecting members of the public with an identifiable and financially accountable source of compensation for injuries caused by leased or owned tractors or trailers. Id. at 31, 422 A.2d 83. We noted that I.C.C. requirements do not control in situations where the dispute is solely between the insurance companies, including controversies between carriers as to which of them affords primary rather than excess coverage. Ibid.
Here, the protection of the public is not involved because the injured party, Thomas Griffin, will be fully compensated for his injuries. We do not have an individual seeking to recover from an insurance company for injuries incurred. Rather, two insurance companies are disputing the amount of coverage each is required to provide for the court ordered additional insureds.
Contrary to PSM's argument, the Third Circuit has held that I.C.C. regulations may alter the terms of an insurance agreement when the protection of the public is at stake, but not a provision affecting a dispute between two insurance companies on the question of who is to provide primary insurance coverage. Carolina Cas. Ins. Co. v. Insurance Co. of N. Am., 595 F.2d 128 (3d Cir.1979). Where the case is concerned "`with responsibility as between insurance carriers,' and not *208 with the federal policy of protecting the public, `I.C.C. considerations are not determinative' and a court should consider the express terms of the parties' contracts." Carolina Cas., supra, 595 F.2d at 138 (quoting Allstate Ins. Co. v. Liberty Mut. Ins. Co., 368 F.2d 121, 125 (3d Cir.1966)). See also Maryland Cas. Co. v. City Delivery Serv. Inc., 817 F.Supp. 525, 531 (M.D.Pa.1993) (holding that I.C.C. regulations have no further effect on insurance policy interpretation so long as the public interest is protected and third parties have been compensated).
New Jersey has expressed the same view. This Court has ruled that I.C.C. regulations do not necessarily determine the issue of coverage and the policy concerns of the I.C.C. are not implicated when the injured party has been afforded adequate coverage by an insurance company. Moore v. Nayer, supra, 321 N.J.Super. at 431, 729 A.2d 449. The responsibility of each insurance company is then determined by state insurance and contract law. Carolina Cas., supra, 595 F.2d at 140-41.
Where there is overlapping coverage, as here, courts should look to the other insurance clauses in the policies. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554, 564, 147 A.2d 529 (1959). In interpreting insurance contracts, "the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990); See also Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992) ("Generally, an insurance policy should be interpreted according to its plain and ordinary meaning.").
Here the "other insurance" provisions read quite clearly. The Reliance business auto policy provides:
5. Other Insurance
a. For any covered "auto" you own, this coverage form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverages this Coverage Form provides for the "trailer" is: (emphasis added).
(1) Excess while it is connected to a motor vehicle you do not own. (emphasis added).
(2) Primary while it is connected to a motor vehicle you own.
Excess insurance coverage provides additional coverage once the policy limits of the other policies are exhausted. Moore, supra, 321 N.J.Super. at 432 n. 9, 729 A.2d 449. Under the terms of its policy, Reliance provides excess insurance for trailers attached to autos not owned by Sea-Land. Reliance is obligated to pay when the primary insurer's coverage is exhausted.
In contrast, the trucker's policy issued by PSM provides:
B. OTHER INSURANCE-PRIMARY AND EXCESS INSURANCE PROVISIONS
1. This policy's liability coverage is primary for any covered auto while hired or borrowed by you and used exclusively in your business ... This policy's liability coverage is excess over any other collectible insurance for any covered auto while hired or borrowed from you by another trucker. However, while a covered auto which is a trailer is connected to a power unit, this policy's liability coverage:
a. Is on the same basis, primary or excess, as for the power unit if the power unit is a covered auto.
b. Is excess if the power unit is not a covered auto.
3. Except as provided in Paragraphs 1 and 2 above, this policy provides primary insurance for any covered auto *209 you own and excess insurance for any covered auto you don't own. (emphasis added).
PSM insured PJT Transportation and PJT owned the tractor (the power unit) that was attached to the trailer owned by Sea-Land. According to the respective policy terms, Reliance, the insurer of the trailer, provided excess coverage when a trailer was attached to an auto not owned by Sea-Land. When the accident occurred, the trailer being unloaded by Mr. Griffin was attached to the power unit, for which PSM provided primary coverage, and thus the PSM policy was also primary for the attached trailer under subsections B1 and 3 of the PSM "other insurance clause" quoted above.
The motion judge properly agreed with Reliance that I.C.C. regulations were not controlling in the current situation and "in accord with the [insurance] policies" granted Reliance's motion for summary judgment against PSM, ruling that there was no factual dispute as to what level of coverage each insurance company provided. R. 4:46-2. PSM provided primary insurance for covered autos owned by the insured, PJT. Thus, as PJT owned the tractor (auto) involved in the accident, PSM is the primary insurance provider according to the terms of its policy. Because this case does not involve an injured third party seeking to recover compensation for injuries, I.C.C. considerations are not dispositive and the unambiguous terms of the individual insurance policies control the allocation of liability. Carolina Cas., supra, 595 F.2d at 141.
The record survives analysis under Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Viewing the evidential materials presented in the light most favorable to PSM, there is no dispute of material fact permitting a rational fact-finder to find in favor of PSM.
Affirmed.
NOTES
[1] In accordance with the disposition order recognizing the settlement, the insurance companies have appealed only the issue of priority of coverage.
[2] The Commission existed under the authority of the Interstate Commerce Act (ICA). See 49 U.S.C.A. § 304 (1956), revised 49 U.S.C.A. § 11107 (1978). The Interstate Commerce Commission Termination Act of 1995 (ICCTA), P.L. 104-88, 109 Stat. 803 (1995), codified at 49 U.S.C.A. § 101 to -80101 abolished the I.C.C. and recodified the ICA and renumbered many ICA sections. The ICCTA transferred the remaining functions of the I.C.C. to the Department of Transportation and the Surface Transportation Board. Save for the transfers, the recodification is not substantially different than the original codification. See Phoenix Assurance Co. v. K-Mart Corp., 977 F.Supp. 319, 322 (D.N.J.1997); See also 49 U.S.C.A. § 101, 49 U.S.C.A. § 701.