729 A.2d 449 (1999)
321 N.J. Super. 419
Serafina MOORE and Edward Moore, Plaintiffs,
v.
Priter N. NAYER and Remeshcha Nayer, Defendants,
Leonel Anazco, Anazco Trucking, and Hermes Anazco a/k/a Antonio Anazco, Defendants-Third-Party-Plaintiffs-Respondents-Cross-Appellants,
v.
Old Dominion Freight Line, Inc., Defendant-Appellant-Cross-Respondent,
v.
Vanliner Insurance Company, Third-Party Defendant-Appellant-Cross-Respondent,
Zurich Insurance Company, Third-Party Defendant-Respondent.
New Hampshire Insurance Company, Plaintiff-Respondent-Cross-Appellant,
v. Vanliner Insurance Company, Defendant-Appellant-Cross-Respondent,
Zurich Insurance Company, Defendant-respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1999.
Decided May 26, 1999.
*451 Elias Abilheira, Shrewsbury, for third-party-defendant-appellant-cross-respondent Vanliner Insurance Company (Schoenfeld & Abilheira, attorneys; Mr. Abilheira, on the brief).
Lee Applebaum, Philadelphia, PA, for defendant-appellant-cross-respondent Old Dominion Freight Line, Inc. (Fineman & Bach, attorneys; Mr. Applebaum, on the brief).
Francis X. Garrity, Montclair, for defendants-third-party-plaintiffs-respondents-cross-appellants Leonel Anazco, Anazco Trucking and New Hampshire Insurance Company (Garrity, Graham, Favetta & Flinn, attorneys; Mr. Garrity, of counsel and on the brief; Peter A. Gaudioso, also on the brief).
Neil L. Sambursky, New York City, for third-party-defendant-respondent Zurich Insurance Company (Melito & Adolfson, attorneys; Mr. Sambursky, of counsel and on the brief).
Before Judges PETRELLA, CUFF and COLLESTER.
*450 The opinion of the court was delivered by PETRELLA, P.J.A.D.
This consolidated appeal arises from the Law Division's grant of summary judgment in a dispute over insurance coverage between insurers stemming from a personal injury action arising out of a motor vehicle accident. Plaintiff, Serafina Moore, was involved in a collision with a tractor-trailer that was leased to defendant, Anazco Trucking, an Interstate Commerce Commission (ICC) certified carrier, that was hauling a trailer under an agreement with Old Dominion Freight Line, Inc. (Old Dominion), another ICC certified carrier. That agreement, denominated a Cartage Contract, also contained an indemnification provision.
The underlying personal injury action with plaintiffs[1] was settled for $350,000, to be paid in accordance with the judge's declaratory ruling, subject to the parties' rights on appeal. What remains is the declaratory judgment action involving the insurers and the allocation of liability among them. Various insurers issued policies covering the vehicles involved in the accident. Leonel Anazco, the tractor owner and driver, had a "bobtail" policy[2] issued by Zurich Insurance Company (Zurich) covering the tractor. Anazco Trucking, the lessee of the tractor, was insured by New Hampshire Insurance Company (New Hampshire). Old Dominion, the owner of the trailer, was insured by Vanliner Insurance Company (Vanliner) under a one million dollar policy with a $250,000 deductible or retainage. Leonel Anazco and Anazco Trucking filed a Third *452 Party Complaint against Vanliner and Zurich, seeking a declaration that they were covered under those policies. New Hampshire filed a separate declaratory judgment action seeking to establish that Zurich and Vanliner were the primary insurers. The matters were consolidated and New Hampshire, Zurich, and Vanliner moved for summary judgment. Old Dominion renewed an earlier summary judgment motion that had been denied.
On cross-motions for summary judgment Old Dominion, through its insurance carrier, Vanliner, was held to be solely responsible for the insurance coverage. The judge held that Old Dominion was primarily liable for the damages. In so holding, the judge concluded that Anazco Trucking rebutted the presumption in Cox v. Bond Transportation, Inc., 53 N.J. 186, 249 A.2d 579, cert. denied, 395 U.S. 935, 89 S.Ct. 1999, 23 L.Ed.2d 450 (1969), that the ICC number displayed on the tractor was that of the primarily responsible party by showing that the load was controlled by Old Dominion whose ICC number should have been on the truck. He also held that because there was ample coverage Zurich's policy was not implicated. Moreover, the judge concluded that the Cartage Contract was a lease, and in accordance with the "other insurance clauses" Vanliner's coverage is primary and New Hampshire's is excess.
The judge also ruled that the so-called "self-insured retention" was a form of self-insurance that rendered Old Dominion an insurer, and thus it could not obtain indemnity from its insured, Anazco Trucking, under the indemnity provision of the agreement between them. Judgment was entered in favor of Leonel Anazco, Anazco Trucking, and New Hampshire.[3] The appeals of Old Dominion and New Hampshire were consolidated.[4]
Old Dominion argues that the motion judge erred by: (1) not finding Anazco Trucking liable for the actions of Leonel Anazco; (2) finding that Anazco Trucking was not obligated to indemnify Old Dominion for its loss (particularly its deductible or retainage) in accord with the Cartage Contract; and, (3) finding that Old Dominion was an insurer because of a claimed self-insured retention under the Vanliner policy.
Vanliner, Old Dominion's insurer, similarly argues that the trial court erred in granting summary judgment and that New Hampshire should be liable for the deductible, i.e., the first $250,000 of the settlement. It asserts: (1) Old Dominion did not lease the Anazco tractor and was operating under the authority of Anazco Trucking, as evidenced by Anazco Trucking's displaying only its ICC carrier number on its tractor; (2) Vanliner's policy provides excess coverage; and, (3) the other insurance clause does not apply until the self-insured retention is exhausted. Finally, it argues that Zurich's "bobtail" policy is contrary to New Jersey compulsory insurance laws and violates public policy.
Leonel Anazco, Anazco Trucking, and New Hampshire argue in this appeal that: (1) the Cartage Contract between Anazco Trucking and Old Dominion should be deemed a lease, and as such Vanliner's coverage provides primary liability; (2) the other insurance clauses support the motion judge's decision that Vanliner's policy provides primary coverage; (3) the judge appropriately held that ICC regulations impose liability on Old Dominion; (4) that we should reject Vanliner's arguments that the self-insured retention does not constitute other insurance; (5) the judge appropriately *453 dismissed Old Dominion's counterclaim for indemnification; and, (6) Zurich's "bobtail" policy violates public policy.
Zurich argues that we should affirm the judge's decision that its policy does not apply. Alternatively, it takes the position that if we conclude that its "bobtail" policy violates public policy, all three insurers should share responsibility pro rata.
On or about September 4, 1990, Anazco Trucking and Old Dominion, both ICC certified carriers, entered into a contract denominated a Cartage Contract whereby Anazco Trucking would haul Old Dominion's trailers with its trucks. Section 2.13 of the contract provides that Anazco Trucking will:
be responsible as an "Independent Contractor" and [will] indemnify and hold harmless [Old Dominion] for loss or damage sustained by the Carrier on account of a) injury to or death of persons ... caused by or resulting from acts and/or omissions of [Anazco Trucking] or any of [its] agents, servants .... Section 2.15 provides that Anazco Trucking will:
indemnify, save and hold harmless [Old Dominion], its successors, and assigns, against all suits, actions, debts, damages... at law or in equity, and against any loss and damages whatsoever arising from or growing out of the performance of this Agreement by [Anazco Trucking], its servants, agents, or employees. Section 2.16 provides that Anazco Trucking will procure and maintain insurance covering liability arising out of the operation of this agreement, with policy limits as indicated.
Around October 1991, Leonel Anazco purchased a "bobtail" liability insurance policy issued by Zurich to cover the 1990 Mercedes-Benz tractor he owned. Zurich's "bobtail" policy is stated to cover only the tractor when it is not attached to a trailer, and recites:
It is agreed that such insurance as is afforded by the policy for bodily injury liability and for property damage liability, with respect to any automobile does not apply: ... b. While the automobile is attached to any trailer or semi-trailer at any time ....
On January 4, 1994, Leonel Anazco and Hermes Anazco, d/b/a Anazco Trucking Company, entered into an agreement pursuant to which Leonel leased his tractor to Anazco Trucking. Anazco Trucking hired Leonel to drive the tractor. Leonel was making a delivery for Old Dominion on January 7, 1994, pursuant to the contract on route from Jersey City to Moran Ship Yard in Staten Island when the truck was involved in an accident with Moore's and Nayer's vehicles.

I.
Old Dominion contends that the judge erred in holding it liable, arguing that because the truck was driven by Leonel Anazco, leased by Anazco Trucking, and displayed Anazco's ICC number, Anazco Trucking should be held liable.
Anazco Trucking and New Hampshire assert that Old Dominion as an ICC certified carrier, with its ICC filing of Vanliner's certification of insurance, which stated that Vanliner's policy was "primary," is liable for the plaintiff's injuries under ICC statutes and regulations. They contend that the Cartage Contract is nothing more than a lease agreement that falls within the ICC safety regulations, although it does not meet the technical requirements for such agreements under ICC regulations.[5] As such, it contends that ICC regulations *454 require a carrier-lessee to control and be responsible for the conduct of trucker-lessors engaged to transport goods in interstate commerce. See 49 U.S.C.A. § 14102; Federal Motor Carrier Safety Regulations, 49 C.F.R. § 376.22(c)(2).
Vanliner argues that the only lease was between Leonel Anazco and Anazco Trucking. Likewise, it argues that the display of Anazco Trucking's ICC number established that the truck was being operated under its authority, not Old Dominion's.
The issues in this appeal involve: (1) federal statutes and regulations, including ICC statutes and regulations that govern the use of non-owned vehicles by motor carriers; (2) state law pertaining to the rights and duties of insurers and insureds; and, (3) private contracts and the interaction of the three distinct insurance contracts and the Cartage Contract.[6]
Historically, motor carriers operating under the authority of the ICC commonly leased equipment from independent contractors who were not regulated by the ICC. This practice led to abuses which threatened the trucking industry and public safety. Prestige Casualty Co. v. Michigan Mutual Insurance Co., 99 F.3d 1340, 1342 (6th Cir.1996). To address these problems, Congress amended the Interstate Commerce Act to allow the ICC to promulgate regulations governing authorized carriers. See 49 U.S.C.A. § 304(e) (1956), revised 49 U.S.C.A. § 11107 (1978).[7] ICC regulations now require motor carriers to be fully responsible for the operation of certified vehicles in order to protect the public from the adverse consequences of the trucking industry's frequent use of leased or borrowed vehicles. Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc., 719 F.Supp. 455, 457 (W.D.Va.1989), aff'd, 907 F.2d 34 (4th Cir.1990). The Act requires a motor carrier that uses vehicles not owned by it to transport property under an arrangement with another party to:
have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier. [49 U.S.C.A. § 14102(a)(4).]
Under its statutory authority, the ICC has promulgated regulations that govern leasing arrangements between authorized interstate carriers. Specifically, 49 C.F.R. *455 § 387.7 requires the motor carrier to obtain minimum levels of financial responsibility and 49 C.F.R. § 387.301 requires the motor carrier to file a certificate of insurance with the ICC. The purpose of these regulations is to prevent licensed carriers from escaping liability for injuries caused by tractor-trailers by claiming that the lessor-tractors were independent contractors, not employees.[8]St. Paul Fire & Marine Insurance Co. v. Frankart, 69 Ill.2d 209, 213-214, 13 Ill.Dec. 31, 370 N.E.2d 1058 (1977); see American Trucking Associations v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953), reh'g. denied, 345 U.S. 913, 73 S.Ct. 638, 97 L.Ed. 1347 (1953) (discussing abuses which the regulations were designed to remedy).
In Cox v. Bond Transportation, Inc., supra (53 N.J. at 186, 249 A.2d 579), a tractor owner who was hired under an oral lease made a sign with the interstate carrier's ICC number displayed on it and affixed it to his vehicle. Id. at 194, 249 A.2d 579. After making his deliveries, the tractor owner decided to drive home in the tractor because his personal vehicle would not start. Id. at 195, 249 A.2d 579. A jury returned a verdict finding that the driver was carrying on the activity of the lessee while operating his tractor. Id. at 196, 249 A.2d 579.
Our Supreme Court held that a lessor-operator engaged by a carrier for operation within the scope of ICC regulations has in effect become a statutory employee of the carrier and the relationship between them is governed by the regulations. When such a relationship arises, the carrier-lessee takes "`exclusive possession, control, and use of the equipment and... the complete assumption of responsibility in respect thereto.'" Id. at 201, 249 A.2d 579 (quoting then 49 C.F.R. 1057.4(a)(4)). Considering these regulations, the Court held:
[w]hen a lessor-operator is engaged by a franchised carrier to drive his equipment in the carrier's business, and the carrier qualifies or invests him with authority to engage in "authorized" transportation by giving him the decals or signs required by the Commission to show such transportation, prima facie the arrangement is within and subject to Section 1057.4(a)(4) of the regulations.

[Ibid.]
Provided the ICC number remained on the tractor, a strong presumption existed that it was engaged in authorized transportation and remained in the exclusive possession and control of the lessee. Id. at 204, 249 A.2d 579. To eliminate this presumption, the lessee, in accord with ICC regulations, had to remove any references to it as the operating carrier and obtain a receipt that indicates the date possession by the carrier ends. Id. at 205, 249 A.2d 579.
In the instant case, relying on Cox v. Bond Transportation, Inc., supra, the judge acknowledged that there was a presumption that the holder of the ICC number displayed is responsible, but that presumption was considered rebutted because the load was Old Dominion's and its rights were being used, notwithstanding Anazco Trucking's ICC number being displayed.
Indeed, as the motion judge noted, Cox v. Bond Transportation Inc., supra presumes that the ICC number signifies who is responsible for the operation of the vehicle and that presumption may be rebutted. See, e.g., Planet Insurance Co. v. Anglo American Insurance Co., Ltd., 312 N.J.Super. 233, 711 A.2d 899 (App.Div. 1998). Here, there is no dispute that Anazco Trucking was hauling an Old Dominion trailer. See Planet Insurance Co. v. Transport Indemnity Co., 823 F.2d 285, 287 (9th Cir.1987) (failure to comply with *456 ICC regulations that requires display of placard does not relieve carrier from liability so long as vehicle was under control of carrier). ICC statutes and regulations do support the judge's decision that the lessee is responsible for the tractor-trailer. See 49 U.S.C.A. § 14102(a)(4); 49 C.F.R. § 376.22; see also Carolina Casualty Insurance Co. v. Belford Trucking Co., 121 N.J.Super. 583, 584, 298 A.2d 288 (App.Div.1972), certif. denied, 63 N.J. 502, 308 A.2d 667 (1973) (certified interstate carrier became primary insurer of the tractor and trailer leased to it). As noted, the ICC statutes and regulations were adopted to combat abuses associated with the hiring of tractor owners who failed to meet certain levels of financial responsibility that precluded those injured in accidents with the tractor-trailer from obtaining recovery. Here, those policy concerns are not implicated because there are insurance companies providing adequate coverage. Plaintiffs in fact recovered and there is no claim of insufficient coverage. Thus, the ICC regulations do not necessarily determine the issue of coverage. See Allstate Insurance Co. v. Liberty Mutual Ins. Co., 368 F.2d 121 (3d Cir.1966).
Generally, where there is overlapping coverage, courts look to the "other insurance" clauses.[9]See Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co., 28 N.J. 554, 559, 147 A.2d 529 (1959); see also Blue Bird Body Co., Inc. v. Ryder Truck Rental, Inc., 583 F.2d 717, 719 (5th Cir.1978) (based on other insurance clauses both policies applied to the loss on equal basis); Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 165-166 (3d Cir.1987) (where an accident arises out of a rig whose component parts are separately insured, all insurance applicable to the combined vehicle comes into play). Railhead Freight Systems, Inc. v. United States Fire Insurance Co., 924 F.2d 994 (10th Cir.1991), involved a tractor owned by Hutchinson, an employee of Railhead Freight, that was involved in a motor vehicle accident. Another company, Kroblin Refrigerated, leased the truck and driver from a partnership that had obtained leasing authority from Hutchinson. Id. at 994. Railhead, Hutchinson and the partnership were insured by Integral Insurance Company and Kroblin was insured by United States Fire Insurance. Both insurance companies sought a declaratory judgment to determine which provided primary insurance. Id. at 995. The Tenth Circuit, after reviewing the "other insurance" clauses of the policies, both of which contained the same clause, found that the United States Fire policy was primary. Id. at 996.[10] The court also relied on the policy terms that defined an insured to support its conclusion that United States Fire was liable because Hutchinson was a permissive user and owner, the partnership was the lessor of the truck, and Railhead was the driver's employer, all of whom were covered under the policy terms defining "insured." Ibid.
Here, both the Vanliner and the New Hampshire policies contain the following "other insurance" provision:
a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while

*457 hired or borrowed from you by another "trucker." However, while a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Liability is:
(1) On the same basis, primary or excess, as for the power unit if the power unit is a covered "auto."
(2) Excess if the power unit is not a covered "auto."
b. Any Trailer Interchange Coverage provided by this Coverage Form is ordinary for any covered "auto."
c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.
d. For Hired Auto Physical Damages Coverage, any covered "auto" you hire or borrow is deemed to be a covered "auto" you own.
e. Regardless of the provisions of paragraphs a. b. and c. above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract."
f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis. [emphasis added.]
As to the initial issue argued by Vanliner that Old Dominion did not lease the Anazco tractor, the motion judge stated that the Cartage Contract was a lease and Old Dominion was liable in accordance with the "other insurance" clause. Vanliner contends that Leonel Anazco's lease to Anazco Trucking does not permit Anazco Trucking to sublease the tractor. Moreover, it argues that neither party intended to lease the tractor to Old Dominion. We reject that argument. Leonel Anazco's arrangement with Anazco Trucking does not preclude a conclusion that the Cartage Contract is a lease. Most contracts for trucking, whether referred to as cartage contracts or not, are generally referred to by courts as leases. In any event, it is irrelevant since Old Dominion hired Anazco Trucking.
What complicates the interpretation of the "other insurance" clauses is the fact that Anazco Trucking hired Leonel Anazco's tractor and Old Dominion hired Anazco Trucking. Based on these facts, New Hampshire would provide primary coverage for Leonel Anazco's truck as it was hired by Anazco Trucking, and "used exclusively in your business as a `trucker' and pursuant to operating rights granted to you by a public authority." But, the question is whether the truck was operating under the rights of Anazco Trucking or Old Dominion, notwithstanding the fact that only Anazco Trucking's ICC number was displayed on its tractor.[11] However, the policy then goes on to state that the coverage is "excess over any other collectible insurance for any covered `auto' while hired or borrowed from you by another `trucker.'" Indeed, Anazco Trucking was hired by Old Dominion, which supports the position that the New Hampshire policy provides excess coverage if there was "other collectible" insurance.
From Vanliner's point of view its policy would be "primary for any covered `auto' while hired or borrowed by you and used exclusively in your business as a `trucker' and pursuant to operating rights granted to you by a public authority." Again, the question is whether the truck was operated pursuant to Old Dominion's ICC rights. The record supports the motion judge's *458 conclusion that it was, thus making Old Dominion's policy (issued by Vanliner) the primary coverage, while New Hampshire's coverage provides excess coverage, provided there exists "other collectible insurance." Moreover, Vanliner's Motor Carrier Cargo liability certificate of insurance filed with the ICC and declaring itself primary insurance supports the position that it provides primary coverage.[12] The certificate stated: "This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident." Contrary to Vanliner's assertion, its policy does not support its position that it is excess coverage because it is excess coverage where the vehicle is "hired or borrowed from you." (emphasis added) The record is bare of any support for an interpretation that Anazco Trucking hired Old Dominion's trailer.
That, however, does not end our inquiry. Vanliner argues that if it provides primary coverage, the New Hampshire policy must still provide the first $250,000 of recovery because of the self-insured retention in the Vanliner policy. Vanliner also argues that the interplay between the policies should be applied in accordance with Scott v. Salerno, 297 N.J.Super. 437, 688 A.2d 614 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997), where we held that a deductible or self-insured retention is not "other collectible insurance."
New Hampshire responds that Vanliner's failure to raise this issue precludes it from being considered on appeal, and that in any event Scott v. Salerno, supra (297 N.J.Super. at 437, 688 A.2d 614) is inapplicable because Old Dominion was bound by the mandatory requirements of the ICC regulations, which require the primary insurer to pay from the first dollar of coverage. See 49 C.F.R. § 387.303(a)(1).
In Scott v. Salerno, we held that a deductible or self-insured retention does not constitute "other insurance." There, a valet was involved in an accident while parking an automobile at Bally's casino. Id. at 441, 688 A.2d 614. Bally's notified Rutgers Casualty Insurance Company (Rutgers), the car owner's insurer, of the accident and that the auto was being driven by its valet. The trial court held that the policy covered the valet and Bally's. Id. at 443, 688 A.2d 614. Rutgers argued that its coverage must be prorated with the coverage afforded Bally's under the "other insurance" clause. Bally's policy, however, contained a "retention or deductible" of $150,000. We held that a deductible, unlike qualified statutory self-insurance or other forms of protection equivalent to a policy of insurance, is not "other insurance," which an ordinary policy holder would consider to be "another policy covering the same risk." Id. at 450-451, 688 A.2d 614; White v. Howard, 240 N.J.Super. 427, 433, 573 A.2d 513 (App.Div.), certif. denied, 122 N.J. 339, 585 A.2d 354 (1990) ("`self-insurance' to the extent that it represents an insured's deductible amount above which a policy will be effective, is not to be considered other insurance"). Thus, Bally's "deductible or retention" did not qualify as other insurance. Id. at 451, 688 A.2d 614; see also Stratford School District v. Employers Reinsurance Corp., 162 F.3d 718, 721 (1st. Cir.1998) (holding that self-insured retention was not "other insurance"); General Star National Insurance Corp. v. World Oil Co., 973 F.Supp. 943, 949 (C.D.Cal.1997) (SIR [self-insured retention] effectively transforms what is labeled a primary policy into *459 an excess policy covering only amounts in excess of the amount of the self-insured retention).
Here, the motion judge concluded that Old Dominion should be considered an insurer because of the $250,000 self-insured retention in the Vanliner policy. Based on Scott v. Salerno, supra, a deductible or self-insured retention does not constitute other insurance for the purposes of allocating responsibility under "other insurance" clauses. Thus, New Hampshire is liable for the first $250,000 of the loss and Vanliner is liable for the next $100,000 as it becomes the primary coverage after the self-insured retention. But see 49 C.F.R. 387.303 ("`primary security' means public liability coverage provided by the insurance company [ ] responsible for the first dollar of coverage").

II. Old Dominion contends that federal law does not make it an insurer of Anazco Trucking, arguing that there is a difference between a deductible or self-insured retention and self-insurance. It argues that it never intended the self-insured retention to constitute self-insurance, the functional equivalent of an insurance policy.
Here, the motion judge concluded that Old Dominion was self-insured as to the $250,000 self-insured retention; therefore, it is in the same position as an insurance company in that it cannot be indemnified from an additional insured, namely Anazco Trucking.
Insurance contracts are contracts of adhesion between parties of unequal bargaining power. Because insurance policies are presumed to be drafted by experts learned in the law of insurance, it is unfair that the insured bears the burden of any ambiguity in the policy. Thus, any doubt as to the existence or extent of coverage is normally resolved in the insured's favor according to objectively reasonable expectations. Meier v. New Jersey Life Insurance Co., 101 N.J. 597, 611-612, 503 A.2d 862 (1986). In interpreting insurance contracts, "the words of an insurance policy should be given their ordinary meaning, and in the absence of an ambiguity, a court should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Insurance Co. of New Jersey, 121 N.J. 530, 537, 582 A.2d 1257 (1990); Voorhees v. Preferred Mutual Insurance Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992).
In this case, we must interpret the term self-insured retention. Although somewhat novel, some cases provide guidance as to the meaning of self-insured retention. In American Nurses Association v. Passaic General Hospital, 192 N.J.Super. 486, 471 A.2d 66 (App.Div.1984), aff'd in part, rev'd in part, 98 N.J. 83, 484 A.2d 670 (1984), we were called upon to determine whether a "self-insured sum" was a deductible or "other insurance" and concluded:
[S]elf insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract. [citation omitted] Clearly then, one may be regarded as a self-insured as to any risk of loss to which he is subject and which is susceptible to insurance coverage but as to which he has not obtained such coverage. As a matter of colloquial usage, he is a self-insurer of that risk. But as a matter both of common sense and fundamentals of insurance law, a failure to purchase obtainable insurance is not itself insurance. That failure simply and inevitably means that there is no insurance for that risk. Thus, the undertaking to self-insure cannot, by definition, be regarded as insurance. The same is true when only part of the risk of loss is

*460 shifted to an insurer. The insured's retained portion of the risk of loss is the so-called "deductible" amount, if any, and the extent to which the risk exceeds the policy limits. The insured is a "self-insurer" as to both retained portions of the risk.
[American Nurses Association v. Passaic General Hospital, supra (192 N.J.Super. at 486, 471 A.2d 66).]
Our courts appear to have used the terms self-insured retention and deductible interchangeably. See Owens-Illinois, Inc. v. United Insurance Co., 264 N.J.Super. 460, 498-503, 625 A.2d 1 (App.Div.1993), rev'd, 138 N.J. 437, 650 A.2d 974 (1994) (using self-insured retention and deductible interchangeably and stating that self-insured retention is essentially a deductible); see also Neuman v. Wakefern Foods, 205 N.J.Super. 263, 267, 500 A.2d 752 (App.Div.1985) (stating that self-insurance provision could also be considered a deductible).
Although New Jersey cases seem to use self-insured retention or self-insured sum synonymously with deductible, and not self-insurance,[13] the precise meaning of self-insured retention is somewhat ambiguous. It is thus necessary to look to the reasonable expectations of the insured. See Meier v. New Jersey Life Insurance Co., supra (101 N.J. at 611-612, 503 A.2d 862); Owens-Illinois, Inc. v. United Insurance Co., supra (264 N.J.Super. at 487, 625 A.2d 1). It is important to note that deductible can be considered a form of limited "self-insurance" because the insurer is assuming the risk of loss for a given amount. See American Nurses Association v. Passaic General Hospital, supra (192 N.J.Super. at 486, 471 A.2d 66). However, it would be wholly unreasonable for an insured to expect that self-insured retention means self-insured, as frequently used in insurance law. For one thing, such an expectation would create statutory duties as a self-insurer pursuant to N.J.S.A. 39:6-52. See also N.J.A.C. 11:3-30.1 to 11:3-30.10. A more reasonable interpretation would treat the term much like the term deductible. N.J.S.A. 17:47A-2 defines deductible as "any arrangement under which an insurer pays claims and then seeks reimbursement from the insured, except that the insurer's obligation to pay claims is not contingent upon reimbursement from the insured" and defines self-insured retention as "any fund or other arrangement to pay claims other than by an insurer, or any arrangement under which an insurer has no obligation to pay claims on behalf of an insured if it is not reimbursed by the insured." One requires an up front payment by the insurer, while the other requires some payment as a condition to the insurer's duty to pay under the policy. Both terms are used in conjunction with an insurance policy that shifts the risk of loss to a carrier for some unexpected event, as different from no insurance. And both are referred to in conjunction with an insurance policy whereby the insured retains some risk for a reduction in premiums payable to the insurer. Hence, the motion judge erred in concluding the self-insured retention made Old Dominion an insurer of Anazco Trucking.

III.
Old Dominion, relying on Carolina Casualty Insurance Co. v. Insurance Company of North America, supra (595 F.2d at 128), argues that ICC regulations do not defeat the motor carrier's rights of contribution and indemnification governed by a private agreement entered into between the parties.
New Hampshire contends that we should affirm the motion judge's decision striking Old Dominion's counterclaim for indemnification because: (1) indemnification is moot since the available coverage was more than sufficient to satisfy the *461 plaintiffs' claims; (2) as an insurer Old Dominion cannot seek subrogation from an insured, such as Anazco Trucking; (3) ICC regulations mandate that Old Dominion insure the subject vehicle; and, (4) the contractual indemnity provisions contemplate that Anazco Trucking would indemnify where Old Dominion was held vicariously liable for Anazco's negligence, not for the deductible of the Vanliner policy.
Section 2.13 of the Cartage Contract provides that Anazco Trucking will be "responsible as an `Independent Contractor' and to indemnify and hold harmless ... [Old Dominion] Carrier for Ioss or damage sustained by [Old Dominion] on account of (a) injury to or death of persons, loss or damage to property caused by or resulting from acts and/or omissions of [Anazco Trucking], or any of [its] agents, servants, or employee ...." Section 2.15 states that Anazco Trucking will "indemnify, save, and hold harmless the Carrier, its successors and assigns, against all suits, actions, debts, damages, costs, charges and expenses ... arising from or growing out of the performance of this Agreement by [Anazco Trucking], its servants, agents, or employees."
At first glance, this agreement appears to run contrary to the thrust of the ICC regulations for interstate carriers in that it attempts to shift responsibility to the tractor-lessor. However, as previously noted, ICC regulations do not govern this dispute between insurance carriers. Moreover, in Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, 39-40, 96 S.Ct. 229, 235, 46 L.Ed.2d 169 (1975), the United States Supreme Court held that the ICC regulations that require the lessee to have control and responsibility of lessor's vehicle do not preclude indemnification agreements, so long as the lessee does not absolve itself from the duties to the public imposed by the regulations. See also Ryder Truck Rental Co., Inc. v. UTF Carriers, Inc., supra (719 F.Supp. at 460-461) ("indemnity agreement providing that a contractor repay a carrier for liability incurred due to the negligence of its leased driver is consistent with intent of federal regulations").
Indemnification agreements are interpreted in accordance with the general rules governing construction of contracts. Leitao v. Damon G. Douglas Co., 301 N.J.Super. 187, 191, 693 A.2d 1209 (App. Div.), certif. denied, 151 N.J. 466, 700 A.2d 879 (1997). No party has set forth any basis upon which the indemnification clause is unenforceable based on general contract principles. However, because New Hampshire is primarily liable for the first $250,000 of the settlement, the issue of indemnification need not be addressed. It would arise if Old Dominion had to pay the deductible or self-insured retention under the Vanliner policy. That fact, however, does not change the conclusion that the indemnification clause is enforceable. It merely provides an alternative basis for concluding that Anazco Trucking or its insurer would be obligated to reimburse Old Dominion.

IV.
Vanliner and New Hampshire both argue that Zurich's "bobtail" insurance,[14] violates public policy as contrary to New Jersey's compulsory motor vehicle insurance laws, N.J.S.A. 39:6B-1 and 39:6A-3, as well as being an illegal escape clause. Zurich argues that Casey v. Selected Risks Insurance Co., 176 N.J.Super. 22, 422 A.2d 83 (App.Div.1980), supports the grant of summary judgment.
In Casey v. Selected Risks Insurance Co. we commented, without deciding the issue, that a "bobtail" policy "may well" violate N.J.S.A. 39:6B-1. There, a tractor owner was hired and his tractor leased by an ICC carrier. His tractor's insurance *462 policy contained a "bobtail" exclusion, stating the policy "does not apply ... while the automobile or any trailer attached thereto is used to carry property in any business." Id. at 32, 422 A.2d 83. The ICC carrier's trailer was insured under a policy that covered trailers hauled by independently owned tractors. Id. at 26, 422 A.2d 83. Summary judgment was granted in favor of the defendants in a personal injury action that arose from a motor vehicle accident involving the tractor-trailer, while the insurer's limited "bobtail" coverage was found not void as against public policy.
On appeal, the plaintiff argued, as Vanliner and New Hampshire now argue in this case, that state legislation requires that any motor vehicle insurance policy provide full coverage while it is in operation, and that the insurer of a tractor may not avoid state insurance requirements simply because it is hauling a trailer that has federally-mandated insurance that also covers the tractor. We noted:
As an abstract issue of law, it may well be that the "bob-tail" provision should not be enforced as being violative of N.J.S.A. 39:6B-1 and the [ ] policy should be amended to conform to the minimum coverage limits set forth therein.
We are satisfied, however, that this issue should not be decided in the present case. Here the trailer was owned by a certified I.C.C. carrier that had insurance coverage on the owner-operator of the tractor. We are concerned primarily with the plaintiff's rights against the insurance companies and with assuring adequate insurance coverage for her decedent's injuries.... Thus, the instant case does not present the need for determining whether the "bob-tail" provision in [the] policy violates New Jersey law or public policy.

[Id. at 33-34, 422 A.2d 83.] See Planet Insurance Co. v. Anglo American Insurance Co., supra (312 N.J.Super. 233, 711 A.2d 899) (insurer that issued "bobtail" policy was entitled to judgment as a matter of law); Planet Insurance Co. v. Transport Indemnity Co., supra (823 F.2d at 289) (similar provision that excluded coverage when tractor was operating in the business of others upheld); Integral Insurance Company v. Maersk Container Service Company, 206 Mich.App. 325, 330-331, 520 N.W.2d 656, 659 (Ct.App. 1994), appeal denied, 448 Mich. 921, 533 N.W.2d 586, reh'g. denied, ___ Mich. ___ 536 N.W.2d 778 (1995) (reversing trial court's holding that "bobtail" policy was void as contrary to public policy where the policy in conjunction with other policy provided continuous insurance coverage as required by the motor vehicle financial responsibility law). But see Contrans, Inc. v. Ryder Truck Rental, Inc., supra (836 F.2d at 166) (noting that under Pennsylvania law, escape clauses are disfavored and the primary loss will be recognized by the company seeking to escape liability); Royal Indemnity Co. v. Providence Washington Insurance Co., 952 F.Supp. 125 (N.D.N.Y.1997), amended, 966 F.Supp. 149, aff'd, 172 F.3d 38 (2d Cir.1999) (indicating
that "New York courts have been fairly uniform in finding a violation of public policy unless the insurance policy containing the ["bobtail"] exclusion by its terms requires a lessee to obtain other insurance coverage"); R.E. Turner, Inc. v. Connecticut Indemnity Company, 925 F.Supp. 139, 146 (W.D.N.Y.1996) ("bobtail" exclusions are invalid as against New York public policy as the operation of the exclusion would leave an injured party without recourse).
Here, Zurich's policy provides: "[i]t is necessary that you and the company that you are leased to or haul for understand that there is NO BOBTAIL LIABILITY coverage under the Bobtail Policy when you are attached to any trailer whatsoever." It also provides policy limits of $25,-000 for bodily injury in any one accident for one person, $100,000 for bodily injury in any one accident for more than one person, and $25,000 for property damages *463 in any one accident.[15] The motion judge considered this case similar to Casey v. Selected Risks Insurance Co., supra in that there was ample coverage without Zurich's coverage. As in Casey, there is no claim that there is insufficient coverage for plaintiff's injuries. We thus affirm the dismissal as to Zurich.
In summary, we affirm the motion judge's decision that Anazco Trucking rebutted the presumption that the holder of the ICC carrier number displayed on the tractor is liable; that Old Dominion-Vanliner is primarily liable taking into account the "other insurance" clauses. We reverse the determination that Old Dominion was a self-insurer for the first $250,000 and that it could not enforce the indemnification agreement because Anazco Trucking was an insured. New Hampshire is liable for the first $250,000 because the self-insured retention does not constitute "other insurance." Payment above that amount is the responsibility of Vanliner, as the primary insurer where other collectible insurance exists. We affirm the decision that Zurich's policy does not apply.
Affirmed in part and reversed in part.
NOTES
[1] On June 3, 1994, Serafina and Edward Moore, who asserted a per quod claim, filed a complaint against Priter Nayer, Remeshcha Nayer, Leonel Anazco, Hermes Anazco, Anazco Trucking and Old Dominion, seeking damages for their injuries suffered in a motor vehicle accident with the tractor-trailer. Old Dominion asserted a cross-claim against Anazco Trucking. The individual parties in the tort action, the Moores and defendants Priter N. Nayer and Remeshcha Nayer are not involved in this appeal.
[2] "Bobtail" insurance is an expression limiting coverage only to those instances where the tractor is being used without the trailer and is not being operated in the business of an authorized carrier. Prestige Casualty Co. v. Michigan Mutual Insurance Co., 99 F.3d 1340, 1343 (6th Cir.1996).
[3] On September 12, 1997, the judge awarded attorneys' fees to New Hampshire, after considering the factors in Enright v. Lubow, 215 N.J.Super. 306, 313, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987). R. 4:42-9(a)(6).
[4] The appeal is essentially by Old Dominion's insurer, Vanliner. This appeal is essentially a dispute between insurers who are the true parties in interest.
[5] Federal Motor Carrier Safety Regulations, 49 C.F.R. § 376.22 provides that an authorized carrier may lease equipment to or from another authorized carrier under certain conditions, such as the written agreement:

must provide that control and responsibility for the operation of the equipment shall be that of the lessee from the time possession is taken by the lessee and the receipt required under § 376.11(b) is given to the lessor until: (i) Possession of the equipment is returned to lessor ... or (ii) in the event that the agreement is between authorized carriers, possession of the equipment is returned to the lessor or given to another authorized carrier in an interchange of equipment.
[6] In Carolina Casualty Insurance Co. v. Insurance Co. of North America, 595 F.2d 128, 138 (3d Cir.1979), the Third Circuit concluded that the federal policy of assuring compensation to injured parties in accidents with motor carriers does not prevent courts from examining the manner in which private agreements or state law would allocate the ultimate financial burden. In that case, the Court stated:

since it is not sufficient to look solely to the federal motor carrier requirements or to the lease and insurance provisions pursuant thereto for a determination of the respective duties of an insurer and a partially self-insured lessee, it is necessary to examine the allocation of legal obligations which state law imposes, and to examine the insurance contracts to see whether they effectively provide a different allocation of financial responsibility.
[Carolina Casualty Ins. Co. v. Insurance Co. of North America, supra (595 F.2d at 139).]
See Allstate Insurance Co. v. Liberty Mutual Insurance Co., 368 F.2d 121 (3d Cir.1966) (where case is concerned with responsibility between insurance carriers and not with the policy of protecting the public, ICC considerations are not determinative and the court should consider the terms of the parties' contract).
[7] The ICC Termination Act of 1995 (ICCTA), P.L. 104-88, 108 Stat. 803 (1995), codified at 49 U.S.C.A. § 101 et seq., abolished the ICC and transferred certain functions to the Department of Transportation and the Surface Transportation Board. The ICCTA recodified the Interstate Commerce Act and renumbered many sections, including 49 U.S.C.A. § 11107, now 49 U.S.C.A. § 14102. See Phoenix Assurance Co. v. K-Mart Corp., 977 F.Supp. 319, 322 (D.N.J.1997); see also 49 U.S.C.A. § 101, 49 U.S.C.A. § 701.
[8] Prior to enactment of the Act and regulations, an injured party could not recover from a licensed carrier without establishing that the carrier had a right to control the lessor-tractor's activities and the lessor-tractor was acting within the scope of his employment at the time of the harm. St. Paul Fire & Marine Insurance Co. v. Frankart. 69 III.2d 209, 213-214, 13 Ill.Dec. 31, 370 N.E.Id2d 1058 (1977).
[9] There are generally three types of "other insurance" clausesexcess, pro rata, and escape. Excess clauses provide additional coverage once the policy limits of other policies are exhausted. Pro rata provisions allocate financial responsibility between concurrent policies. An escape clause releases the insurer from all liability to the insured if other coverage is available. Contrans, Inc. v. Ryder Truck Rental, Inc., 836 F.2d 163, 166 (3d Cir.1987).
[10] Based on the portions quoted in the opinion, they appear to be identical to those contained in New Hampshire's and Vanliner's policy.
[11] For this reason, it could be argued that the policy is ambiguous, leading to a conclusion that both insurers should be equally liable. See Zamalloa v. Hart, 31 F.3d 911 (9th Cir.1994) (ICC regulations implicitly approve shared control and responsibility among carriers); Prestige Casualty Co. v. Michigan Mutual Insurance Co., supra (99 F.3d at 1352) (holding that both policies are primary, requiring pro rata apportionment).
[12] There are three views on how this endorsement affects the allocation of risk among insurers: (1) the ICC endorsement makes the insurance policy that it is attached to primary, as a matter of law over all other insurance policies that lack similar provisions; (2) the ICC endorsement only negates limiting provisions in the policy that it is attached to, yet it does not establish primary coverage over other policies that are also primary by its terms; and, (3) the ICC endorsement applies only where a claim is being asserted by a shipper or member of the public, and it has no application among insurers. Prestige Casualty Co. v. Michigan Mutual Insurance Co., supra (99 F.3d at 1348).
[13] The concept of self-insurance involves a complex of statutory and regulatory requirements which in effect treats the self-insured as an insurer. See Motor Vehicle Security-Responsibility Law, N.J.S.A. 39:6-50.1, 39:6-52; N.J.A.C. 11:3-30.1 to 11:3-30.11.
[14] See footnote 2, supra.
[15] These policy limits exceed the minimum liability insurance coverage required by the state compulsory liability and no fault insurance laws. See N.J.S.A. 39:6B-1 and 39:6A-3.