818 A.2d 443 (2003)
358 N.J. Super. 504
James HARRIS, Plaintiff-Appellant,
v.
Larry MITCHELL, an individual; Larry Trucking, a business entity; Larry Mitchell d/b/a Mitchell Trucking, a business entity; and David Smith, an individual, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 2003.
Decided March 14, 2003.
Neil Malvone argued the cause for appellant (Lombardi and Lombardi, attorneys; Gregory A. Stathis, on the brief).
Frank E. Borowsky, Sea Girt, argued the cause for respondents (Monte, Sachs & Borowsky, attorneys; Mr. Borowsky and Keith M. McWhirk, on the brief).
Before Judges HAVEY, WELLS and PAYNE.
The opinion of the court was delivered by HAVEY, P.J.A.D.
Plaintiff James Harris is an employee of Burnham Services Company, Inc., a certified interstate motor carrier. Pursuant to federal regulations, Burnham leased a tractor from defendant Larry Mitchell, d/b/a Mitchell Trucking. Plaintiff was injured while loading a trailer attached to Mitchell's tractor when Mitchell's employee, defendant David Smith, suddenly moved the tractor, causing plaintiff to fall.
Mitchell, as a contractor-lessor of the tractor, is deemed a "statutory" employee of Burnham. See 49 U.S.C.A. § 1401(a)(4) *444 and 49 C.F.R. § 376.12(c)(1); see also Cox v. Bond Transp., Inc., 53 N.J. 186, 201, 249 A.2d 579 (1969). The trial court held that since, under federal law, Mitchell was an "employee" of Burnham, plaintiff is barred from instituting a third-party action against Mitchell and his employee. The court therefore granted summary judgment in favor of Mitchell and Smith. We reverse. We hold that the federal statute and regulation were not intended to foreclose a carrier's employee from recovering against the contractor-lessor and his employee under state law.
Plaintiff was employed by Burnham as a warehouseman and truck driver at Burnham's Edison facility. Burnham is an interstate motor carrier in the business of hauling freight, and owns and stores trailers at its facility for that purpose.
Mitchell was the owner of a tractor used to haul trailers on behalf of interstate carriers. Burnham leased a Mitchell tractor pursuant to a July 7, 1992 agreement, the terms of which were subject to regulations promulgated by the Interstate Commerce Commission (ICC). The pertinent sections of the lease agreement provide:
WHEREAS, the CONTRACTOR [Mitchell] is the owner of a motor truck or trucks, more completely described in the Certificate of Lease, attached hereto and made a part of this Agreement by specific reference thereto; and
WHEREAS, the CARRIER [Burnham] is a motor carrier engaged in the transportation of goods, wares and merchandise for him in the Continental United States, as prescribed by the Interstate Commerce Commission under Certificate IMC-682, in Ex Parte MC-19, and maintains its home office in Columbus, Georgia and the parties recognize that the form of this Agreement is governed by Part 1057 of the Motor Carrier Regulations of the Interstate Commerce Commission. Therefore, in order to meet the requirements thereof, and for no other purpose, it is agreed that said Equipment shall, during the term hereof, be for the exclusive possession, control and use of CARRIER. However, nothing herein shall be construed as vesting in CARRIER any control or right of control over the leased Equipment or drivers thereof beyond that which is incidental to compliance with the rules and regulations of the aforementioned regulatory bodies. CARRIER shall have no right under this Agreement or otherwise to control the manner, means and methods utilized by any driver of the leased Equipment for the accomplishment of the results of this Agreement.
WHEREAS, the CARRIER wishes to lease said vehicle from CONTRACTOR and assumes responsibility for the Equipment so leased for the period of the lease to the extent required and by and in accordance with the provisions of all applicable Interstate Commerce Commission rules and regulations and state Public Service and Utility Commission.
On August 3, 1998, plaintiff was loading a trailer hitched to Mitchell's tractor. At the time, Burnham's "decal" and ICC identification number were displayed on the tractor, as required by ICC regulations. Plaintiff was injured when Mitchell's employee, defendant David Smith, unexpectedly moved the trailer in a forward direction. Plaintiff recovered workers' compensation benefits from Burnham and filed a third-party personal injury action against Mitchell and Smith.
In granting summary judgment to defendants, the trial court reasoned that the federal statute and regulation governing the relationship between interstate carriers and contractor-lessors "pre-empted *445 state law." The court implicitly concluded that Mitchell's "statutory" employment with Burnham made him a co-employee of plaintiff, thus barring plaintiff's suit under N.J.S.A. 34:15-8.
The existence of an employee's right to receive workers' compensation benefits from his or her employer does not operate as a bar to the employee's right to sue a third party for damages arising from injuries suffered in a work-related accident. N.J.S.A. 34:15-40. However, under N.J.S.A. 34:15-8, the employee is barred from filing a third-party action against a co-employee. See also McIntosh v. DeFilippo, 281 N.J.Super. 171, 176, 656 A.2d 1287 (App.Div.1995). The issue raised by this appeal is whether the "statutory" employee status of Mitchell created by federal law makes Mitchell plaintiff's co-employee under N.J.S.A. 34:15-8. Resolution of that issue requires an examination of the history and purpose of the pertinent federal statute and regulation.
It is common practice for a carrier operating under the jurisdiction of the ICC to lease equipment, such as tractors, from independent contractors. Prestige Cas. Co. v. Michigan Mut. Ins. Co., 99 F.3d 1340, 1342 (6th Cir.1996). Historically, this arrangement led to abuses "which threatened the trucking industry and public safety." Moore v. Nayer, 321 N.J.Super. 419, 428, 729 A.2d 449 (App.Div.), certif. granted, 162 N.J. 132, 741 A.2d 99 (1999), appeal dismissed, 164 N.J. 187, 752 A.2d 1289 (2000). Many of the contractor-lessors were "gypsies who had poor equipment and limited financial capacity." Cox, supra, 53 N.J. at 197, 249 A.2d 579. Unscrupulous carriers used leased vehicles to avoid safety regulations. Prestige, supra, 99 F.3d at 1342. The carriers' use of non-owned vehicles "also caused public confusion as to who was financially responsible for the vehicles." Ibid.
As a result, Congress amended the Interstate Commerce Act (ICA), giving the ICC the power the regulate non-owned equipment by interstate carriers. Ibid.; and see 49 U.S.C.A. § 304(e) (1956), revised 49 U.S.C.A. § 11107 (1978).[1] The ICC promulgated regulations requiring interstate carriers "to be fully responsible for the operation of certified vehicles in order to protect the public from the adverse consequences of the trucking industry's frequent use of leased or borrowed vehicles." Moore, supra, 321 N.J.Super. at 428, 729 A.2d 449. Moreover, 49 U.S.C.A. § 14102(a)(4) (formerly 49 U.S.C.A. § 11107(a)(4)), requires interstate carriers that lease vehicles to:
have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.
The regulations promulgated by the ICC require that leases entered into between carriers and contractors provide that the carrier shall have "exclusive possession, control, and use of the equipment for the duration of the lease." 49 C.F.R. § 376.12(c)(1).
In Cox, supra, 53 N.J. at 199-201, 249 A.2d 579, our Supreme Court examined this federal legislative and regulatory history. *446 There, plaintiffs were injured in an accident involving a tractor owned and operated by McCaskill. At the time of the accident, the tractor was leased to Bond Transport (Bond), and displayed the Bond decal as required by ICC regulations. After transporting a load of oil to a Bond customer, McCaskill struck plaintiffs' vehicles while traveling home in his tractor. Id. at 194-95, 249 A.2d 579. Our Supreme Court initially observed that:
There can be no doubt that the [Interstate Commerce] Commission regarded the trip-leasing arrangement as a device which made it difficult for a member of the public injured by the operation of a vehicle so leased to fix carrier responsibility. The regulatory aim was to remedy that evil and Congress concurred in the objective. See, House Report No. 2425Motor CarriersTrip Leasing, 3 U.S.Code Cong. and Ad. News, 84th Cong.2d Sess., p. 4304 (1956).

[Id. at 200-01, 249 A.2d 579 (emphasis added).]
The Court held that a contractor-owner engaged by the interstate carrier within the scope of the ICC regulations became a "statutory" employee of the carrier and, pursuant to the ICC regulation, the carrier "takes `exclusive possession, control, and use of the equipment....'" Id. at 201, 249 A.2d 579 (quoting then 49 C.F.R. § 1057.4(a)(4)).
Here, the trial court cited Cox in holding that federal law "preempted" plaintiff's right to sue Mitchell and Smith. However, the Court in Cox bottomed its holding on the sound policy underpinnings of pertinent federal law; to prevent interstate carriers from avoiding the consequences of injuries suffered by "members of the public using the highways." Id. at 203, 249 A.2d 579 (emphasis added). The Court was not called upon to address the discrete question before us: whether an employee of the carrier is barred under New Jersey law from instituting a third-party action against the contractor-lessor. Indeed, the cases cited by the Court in Cox involved injuries to third parties using the public highways, not to a carrier's employee. See e.g., Mellon Nat. Bank & Trust Co. v. Sophie Lines, Inc., 289 F.2d 473 (3rd Cir. 1961); Rosu v. Law, 193 F.2d 894 (3rd Cir.1952); National Trailer Convoy, Inc. v. Saul, 375 P.2d 922 (Okl.Sup.Ct.1962); Felbrant v. Able, 80 N.J.Super. 587, 194 A.2d 491 (App.Div.1963). See also Moore, supra, 321 N.J.Super. at 430-31, 729 A.2d 449 (insurance coverage dispute among insurance companies insuring carrier and contractor-lessor, arising out of injuries suffered by a third party).
We hold that the "statutory" employee status created by 49 U.S.C.A. § 14102(a)(4) and 49 C.F.R. § 376.12(c)(1) should not apply to the present circumstances. The "employee" status is essentially a legislative fiction intending to shift responsibility for the safe use of leased equipment to the interstate carrier for the purpose of protecting the public, without consideration of whether in fact the carrier "controls" the conduct of the contractor and its employees. In our view, it was never intended to preclude courts from considering the rights of a carrier's employee under state law. As the District Court in Carolina Cas. Ins. Co. v. Insurance Co. of North Am., 595 F.2d 128, 138 (3rd Cir.1979) observed:
While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties.
*447 See also Riddle v. Trans-Cold Express, Inc., 530 F.Supp. 186, 189 n. 5 (S.D.Ill. 1982) (the lessor and his employees are not the lessee's "statutory" employees for all purposes. "The `statutory employee' fiction exists only to implement the [carrier's] financial responsibility to shippers and the general public").
The policy underpinnings of the federal statute and regulation are not thwarted if, in this case, Mitchell and Smith are deemed independent contractors rather than "employees" of Burnham under New Jersey law. Such a result will not "threaten[ ] the trucking industry and public safety." Moore, supra, 321 N.J.Super. at 428, 729 A.2d 449. Nor will it permit an interstate carrier to avoid the consequences of injuries suffered by "members of the public using the public highways." Cox, supra, 53 N.J. at 203, 249 A.2d 579.
Support for our conclusion is found in Toomer v. United Resin Adhesives, Inc., 652 F.Supp. 219 (N.D.Ill.1986). There, Toomer owned a tractor and leased it to Montgomery Tank Lines, Inc., a licensed ICC carrier. Id. at 228. After Toomer delivered a load of glue containing trichloroethylene, a toxic substance, he returned to the Montgomery plant, became ill and died. His personal representative sued Montgomery for wrongful death on the theory that Toomer was an independent contractor.[2]Id. at 221. Montgomery argued in part that 48 U.S.C.A. § 11107(a)(4) (now 49 U.S.C.A. § 14102(a)(4)) and 49 C.F.R. § 1057.12 (now 49 C.F.R. § 376.12(c)(1)) mandated dismissal because Toomer was a "statutory employee," and, as a matter of law, could not file suit against it. Toomer, supra, 652 F.Supp. at 228. In rejecting the argument, the court observed that in the "typical" case, the federal scheme operates to hold the carrier "liable to the members of the public." Id. at 228-29. Observing the distinction between a suit for injuries suffered by members of the public from a suit for injuries suffered by the contractor-owner, the court concluded that while the terms of the lease between Toomer and Montgomery could not alter the legal rights of third parties to treat Toomer as a "statutory employee" of Montgomery, the lease "may validly alter Toomer's own status." Id. at 229. The court explained:
Having examined all the relevant cases cited by both Montgomery and Toomer, we believe all these cases implicitly recognize this distinction and follow it. Moreover, such a principle furthers freedom of contract and does not in any way detract from the policies established by Congress: shippers and members of the public are protected just as if the carrier was the owner of the tractor-trailer and the drivers were employees. We decide only that owner-lessors and carrier-lessees are free to structure their relationship in any manner they see fit. Here, Toomer and Montgomery may have seen fit to treat Toomer as an independent contractor for all purposes, and we will respect that decision.

[Id. at 229-30.]
The Toomer analysis, and the result reached by the Proctor and Johnson courts, should apply here. If the pertinent federal statute and regulation do not foreclose a contractor or its employee from suing the carrier, it follows that they should not foreclose an employee of the carrier from suing the contractor.
*448 Ultimately, the question in this case is whether Mitchell was an independent contractor or a "special employee." See Kelly v. Geriatric & Med. Servs., Inc., 287 N.J.Super. 567, 572-73, 671 A.2d 631 (App. Div.), aff'd o.b., 147 N.J. 42, 685 A.2d 943 (1996); Murin v. Frapaul Constr. Co., 240 N.J.Super. 600, 606-07, 573 A.2d 989 (App. Div.1990). That question must be resolved by reference to the terms of the lease agreement between the parties and the degree of actual control over Mitchell and Smith exercised by Burnham. That determination can only be reached after a full record is made in the trial court. We therefore reverse and remand for that purpose.
Reversed.
NOTES
[1] The ICC was abolished by the Interstate Commerce Commission Termination Act of 1995 (ICCTA), 49 U.S.C.A. § 101-80101. The ICCTA recodified many ICC sections and the remaining functions of the ICC were transferred to the Department of Transportation and the Surface Transportation Board. See Griffin v. Public Serv. Mut. Ins., 327 N.J.Super. 501, 506 n. 2, 744 A.2d 204 (App.Div. 2000). For the purpose of this opinion, however, we continue to refer to "ICC" regulations for the purposes of convenience.
[2] Plaintiff also sued: (1) Montgomery on the alternative theory that Toomer was its employee and that Montgomery was grossly negligent in failing to provide a safe workplace; and (2) United Resin, the manufacturer of the glue, on a product liability, failure to warn theory. Id. at 221-22.